**In re GROSSINGER'S ASSOCIATES, a New York Limited Partnership, Debtor.**

**Bankruptcy No. 89 B 20943.**

United States Bankruptcy Court, S.D. New York.

April 21, 1995.

Zisholtz & Zisholtz by Gerald Zisholtz, Mineola, NY, for the Creditors.

McCarthy, Fingar, Donovan, Drazen & Smith by William McCreary, White Plains, NY, for trustee.

Schulte Roth & Zabel by Adam G. Landis, New York City, for Lloyds Bank Plc. and Hokkaido Takushoku Bank Ltd.

## MEMORANDUM DECISION DENYING MOTION FOR LEAVE TO COMMENCE AN ACTION ON BEHALF OF THE DEBTOR

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

This is a motion by three creditors, Gold Mechanical Contractors, Inc., Sullivan Sprin-

kler Company, Inc. and G.C. Monaco Electric, Inc. (the "Creditors"), for an order authorizing the Creditors to commence an action on behalf of the Debtor against Lloyds Bank P.L.C. and Hokkaido Takushoku Bank Ltd. (the "Banks"). The Debtor's petition under Chapter 11, Title 11 of the U.S. Bankruptcy Code was filed on December 19, 1989, and the case was converted to Chapter 7 by an order entered on July 30, 1990.

## *Background*

The troubled saga of this well-known institution in Sullivan County, New York, arose out of the failed development of the renowned resort known as Grossinger's Hotel and Country Club after acquisition of the property by the Debtor from the Grossinger family. In May 1988 the Banks, as lenders, and the Debtor, as owner and borrower, entered into a financing arrangement which included a building loan agreement whereby the Banks agreed to lend up to $31,171,744.00 to the Debtor to renovate and expand the Grossinger property. The Banks took a first lien mortgage on virtually all of the real estate and improvements and assignment of rents and leases. The Creditors assert (Application ¶ 10(b)) that the financing agreement called for loans by the Banks of up to $41,173,000 and that the Banks advanced only approximately $27,000,000. The Banks assert that the Grossinger renovation project "never was completed because Grossinger's Associates ran into severe cost overrun problems and defaulted on the loan" (Objection ¶ 3). The Creditors, on the other hand, assert that "The Banks engaged in a scheme designed to create a forfeiture on the part of the Debtor so as to enable the Banks to seize control over the Project" (Application ¶ 10(c)).

The Creditors are among the largest of the more than 60 construction contractors who had furnished labor and materials to the Grossinger's renovation project before the project failed. It does not appear from the papers before me on this motion that any creditors committee was appointed during the less than eight months pendency of the Chapter 11 case.

A Trustee was appointed on the date of the conversion to Chapter 7, July 30, 1990, and during the past nearly five years the Trustee has administered the estate to the point where the estate is on the eve of closing and final distributions. Two important aspects of the Trustee's administration are relevant here. First, by complaint dated November 11, 1991 the Trustee commenced what has been referred to as the omnibus adversary proceeding against 83 of the creditors, including the Banks and each of the three Creditors, seeking a declaratory judgment and order to establish the nature, validity, relative priority, extent and amount of all of the claims of all of the parties with respect to the Debtor's property. Two years later an order (the "Claims Order") was entered on December 16, 1993 determining all issues raised in the omnibus adversary proceeding. In addition, the Trustee made a motion under Section 554(a) of the Bankruptcy Code to abandon certain described claims which, concededly, included the claims which the Creditors now seek to assert purportedly on behalf of the Debtor's estate. After notice and a hearing, an order (the "Abandonment Order") was entered on August 14, 1992.

Two other legal proceedings should be mentioned as background to the instant motion. On March 30, 1990 one of the three Creditors, Gold Mechanical Contractors, Inc., and 23 other mechanics' lienors commenced an adversary proceeding (the "Mechanics' Lienors' Adversary Proceeding") against the Debtor and the Banks in which they asserted, among other things, that their mechanics' liens were superior and prior in right to the liens and security interests claimed by the Banks. As appears from paragraphs 9–13 of the Banks' Objection, the claims asserted in the Mechanics' Lienors' Adversary Proceeding were fully litigated and resolved through appeal. The three Creditors and one other mechanic's lienor also commenced an action in state court in December 1991 (the "State Court Action"). It appears that the complaint in the State Court Action was substantially identical to the proposed complaint which is the subject of this motion. The State Court Action was ultimately dismissed in a decision which was affirmed by the Appellate Division.

The Trustee opposes the instant motion on the grounds that (1) the claims alleged in the Creditors' proposed complaint lack merit, (2) the Creditors' proposed claims are barred by the Abandonment Order, (3) the Creditors' proposed claims are barred by the Claims Order and (4) the motion should be denied for gross laches on the part of the Creditors and the prejudice which would result. The Banks have made a comprehensive submission arguing that the motion should be denied on the grounds that the Creditors' proposed claims are barred by the Abandonment Order, by the Claims Order and by the final disposition of the State Court Action.

### Discussion

Citing *In re STN Enterprises, Inc.*, 779 F.2d 901 (2d Cir.1985), the Creditors assert that the "court must consider three criteria: (1) the claim must be colorable; (2) the intervention must be brought on behalf of the estate; and (3) the Trustee or Debtor-in-Possession has unjustifiable [sic] refused to bring the suit or abused its discretion in not doing so" (Creditors' Application ¶ 8). The objections filed by the Trustee and the Banks raise issues as to the preclusive effect of the Abandonment Order and the Claims Order.

For the reasons set forth below, I conclude that the Creditors have not sustained their burden under any of the three *STN* criteria mentioned above, and that the proposed claims sought to be asserted on behalf of the Debtor's estate against the Banks are barred.[1]

### The Abandonment Order

■■■■ Section 554(a) of the Bankruptcy Code provides that, after notice and a hearing, "the trustee may abandon any property of the estate that is burdensome or that is of inconsequential value and benefit to the estate." As noted in 4 *Collier on Bankruptcy*, ¶ 554.02 at 544-7-8 (15th ed. 1994), "abandonment constitutes a divestiture of all interests in property that were property of the estate.... Abandonment, once accomplished, is irrevocable, regardless of any subsequent discovery that the property had

greater value than previously believed." Abandonment under section 554 removes the property in question from the bankruptcy estate and causes the trustee to lose all interest, rights and control with respect to the abandoned property. *In re Helms*, 1991 WL 284111, *1 (E.D.La.) ("Once a trustee has abandoned property, the trustee is divested of control over the property and it is no longer part of the bankruptcy estate."); *In re Enriquez*, 22 B.R. 934, 935 (Bankr. D.Neb.1982) (abandonment removes property from the bankruptcy estate; once accomplished, abandonment is irrevocable regardless of any subsequent discovery that the asset had greater value than previously believed.) Further, this removal deprives the bankruptcy court of jurisdiction over that property. *In re Helms*, 1991 WL 284111 at *1 ("The effect of the abandonment is to remove the asset from the jurisdiction of the bankruptcy court"); *Tschirn v. Secor Bank*, 123 B.R. 215 (E.D.La.1991) (order signed after notice of intent to abandon by trustee held to remove claim from the bankruptcy estate thus depriving the district court of jurisdiction over the suit); *In re Tarpley*, 4 B.R. 145, 147 (Bankr.M.D.Tenn.1980) ("the practical effect of the [abandonment] is to remove the asset entirely from the jurisdiction of the bankruptcy court.") Accordingly, if the claims sought to be asserted in the proposed complaint were covered by the Abandonment Order, they cannot now be asserted on behalf of the Debtor's estate regardless of their merit.

It is apparent from the submissions of the parties, including the exhibits, that the claims alleged in the proposed complaint annexed as Exhibit B to the Creditors' Application are covered by the Abandonment Order, and in any event the point is conceded by the Creditors. Paragraph 5 of the Creditors' Application states that the Creditors seek to commence an action "which has already been abandoned by the Trustee against the Banks." There is no question that the Creditors had notice of the abandonment motion

---

1. In view of the outcome reached here, it is unnecessary to examine critically the Creditors' summary of the *STN* criteria or the question whether individual creditors, as opposed to a creditors committee, should ever be authorized to sue derivatively on behalf of the estate.

and an opportunity to be heard in opposition. They did not oppose the motion.

At the hearing counsel for the Creditors argued that the proposed claims are not barred by the Abandonment Order because they are carved out by the second paragraph of the Abandonment Order. That paragraph states that "said abandonment is without prejudice to any and all rights which any creditor of the Debtor or any other party in interest may have to pursue any of the above described claims." The Creditors argue, based upon this language, that "the Abandonment Order is without prejudice to the Creditors [sic] right to pursue certain claims *on behalf of the Debtor*." (Application ¶ 15, emphasis supplied) The obvious defect in the Creditors' argument is that the underscored words "on behalf of the Debtor" do not appear in the second paragraph of the Abandonment Order. Indeed, they could not. To order in one paragraph that the described claims are abandoned by the Trustee and, therefore, removed from the estate and barred from pursuit by the estate, and in the very next paragraph to provide that the same claims could be asserted on behalf of the estate by creditors or others obviously would be a contradiction. The purpose of the second paragraph is to make clear that the Order does not purport to affect the rights, if any, of creditors or others to assert the claims in question in their own behalf. The second paragraph of the Abandonment Order does not contain the language relied upon by the Creditors, and I decline to construe the second paragraph in such a manner as to contradict the first paragraph.

To summarize, an order of a bankruptcy court granting a motion by the trustee to abandon a cause of action which could have been asserted on behalf of the debtor's estate in the bankruptcy case, after notice and an opportunity to be heard in accordance with 11 U.S.C. § 554(a), divests the debtor's estate of its property right in the cause of action. *Tschirn v. Secor Bank*, 123 B.R. at 217; *In re Helms*, 1991 WL 284111 at *1; *In re Enriquez*, 22 B.R. at 935; *In re Tarpley*, 4 B.R. at 147. Absent factors not present here, the order of abandonment is final and bars the claim in question from being asserted by the Trustee or anyone else on behalf of the debtor's estate.

### The Claims Order

■ As an additional, independently sufficient basis for denying the motion, the Claims Order entered by the Court in the Trustee's omnibus adversary proceeding also constitutes a bar to the claims now sought to be asserted by the Creditors. The purpose of the omnibus adversary proceeding was to seek an adjudication of all possible claims amongst the parties to the Chapter 7 case so that the Trustee could obtain an order definitively and finally providing for the distribution of the Debtor's estate.

■ An order entered by a bankruptcy court in an adversary proceeding which determines the rights and obligations of parties to the proceeding or the bankruptcy case constitutes an adjudication of the rights and obligations in question. Unless modified or withdrawn pursuant to a motion under Rule 60(b) of the Federal Rules of Civil Procedure or modified or reversed on appeal, such an order is final and binding on the parties to the adversary proceeding, and the parties may not relitigate the rights and obligations adjudicated by the order. To understand how the Claims Order effectively bars the Creditors' request, a brief review of the doctrines of res judicata, issue and claims preclusion and law of the case is warranted. Res judicata is commonly used to refer generically to the law of former adjudication, *In re Justice Oaks II, Ltd., (Wallis v. Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 n. 3 (11th Cir.1990). If subsequent litigation arises from the same cause of action, then the prior decision bars litigation not only of all matters which were "actually offered and received to sustain the demand, but also [of] every [claim] which might have been presented." *Id.* This doctrine is known as claim preclusion. However, if subsequent litigation arises from a different cause of action, the prior judgment bars litigation only of "those matters or issues common to both actions which were either expressly or by necessary implication adjudicated in the first." *Id.* (citing 2A Freeman, *A Treatise of the Law of Judgments* § 677, at 1429–30 (5th ed. 1925); *see Baltimore S.S. v. Phillips*, 274 U.S. 316,

319, 47 S.Ct. 600, 602, 71 L.Ed. 1069 (1927)). The doctrine that refers to this line of former adjudication is known as issue preclusion. As articulated in *Restatement (Second) of the Law of Judgments* Ch. 1 at 6 (1982):

> The law of res judicata expresses essentially simple principles, even through the implications of those principles are often complex. The principle underlying the rule of claim preclusion is that a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not to have another chance to do so. A related but narrower principle—that one who has actually litigated an issue should not be allowed to relitigate it—underlies the rule of issue preclusion.

▇▇▇ Closely related to the doctrines of claim and issue preclusion is the doctrine of law of the case, which holds that "a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation." *In re Chateaugay Corp.*, 136 B.R. 79, 83 (Bankr.S.D.N.Y.1992). The doctrine applies to all issues decided expressly or by necessary implication. *Id.* (citing *United States v. Yonkers Bd. of Educ.*, 856 F.2d 7, 11 (2d Cir.1988); *Fogel v. Chestnutt*, 668 F.2d 100, 108 (2d Cir.1981), *cert. denied*, 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982); *Carrillo v. Heckler*, 599 F.Supp. 1164, 1168 (S.D.N.Y.1984)). The doctrine was clearly expounded in *In re PCH Associates*, 949 F.2d 585, 592 (2nd Cir.1991):

> Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation. 1 B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.404[1], at 117 (1991) (hereinafter "*Moore's Federal Practice*"). "[T]he doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v.*

*Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16, 108 S.Ct. 2166, 2177, 100 L.Ed.2d 811 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983) (dictum)). This doctrine is a discretionary rule of practice and generally does not limit a court's power to reconsider an issue. 1B *Moore's Federal Practice* ¶ 0.404[1], at 120 ("[L]aw of the case is ... a rule of practice and not a limit on authority."). While the doctrine is ordinarily applied in later stages of the same lawsuit, it also has application to different lawsuits between the same parties. *See Schupak v. Califano*, 454 F.Supp. 105, 114 n. 17 (E.D.N.Y.1978) (recognizing that courts usually apply law of the case doctrine to bar relitigation of issues decided in earlier proceedings of the same lawsuit, employing it in later stages of the same lawsuit). The doctrine has been summarized as follows:

> Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. These rules do not involve preclusion by final judgment; instead, they regulate judicial affairs before final judgment.

18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478, at 788 (1981).

In the instant case, the Creditors wish to bring an action on behalf of the Debtor's estate affecting the rights and obligations of the estate, the Banks and the Creditors, as between each other, which were decided either expressly or by necessary implication in the omnibus adversary proceeding. Accordingly, the Claims Order, under the doctrines of res judicata and law of the case,[2] would bar the Creditors from pursuing these claims on behalf of the Debtor's estate.

By entering the Claims Order, the Court necessarily determined all of the rights and obligations of the parties to the omnibus

---

**2.** An order entered in an adversary proceeding would not constitute law of the case in the bankruptcy case in question if the parties to the adversary proceeding were not also parties in the bankruptcy case (although such an order might be invoked as collateral estoppel under the doctrine of issue preclusion). However, in this case the affected parties (namely, the Creditors, the Banks and the Debtor's estate) were all parties to the omnibus adversary proceeding in which the Claims Order was entered.

adversary proceeding and thereby determined all possible claims and defenses which could have been asserted to affect the rights of the parties with respect to the Debtors' estate. The Creditors' proposed claims, if properly alleged in a complaint on behalf of the Debtor's estate, would materially alter rights adjudicated in the Claims Order. For example, the Claims Order (Exhibit F annexed to the Bank's Objection) contains the following decretal paragraphs at pages 13 and 14:

ORDERED, ADJUDGED, DECREED AND DECLARED that the Banks hold perfected security interests and a first lien on the Hotel and Golf Course Parcel and the $3,921,210.81 in proceeds attributable to the same, after deducting the amount of the valid tax lien held by the County on such parcel for the year 1990; and it is further

ORDERED, ADJUDGED, DECREED AND DECLARED that the Banks hold perfected security interests and a first lien on the $34,000.00 in sales proceeds received on the Grossinger Resort Sale attributable to personal property; and it is further ...

ORDERED, that the Trustee be, and she hereby is authorized to pay the Banks up to the maximum sum of $3,955,210.81 from the proceeds received on the Grossinger Resort Sale, on account of the Bank's secured claim with respect to the Hotel and Golf Course Parcel and the personal property included in such sale, or such lesser sum as the Trustee may deem advisable, with the balance to be distributed pursuant to the subsequent order of this Court; and it is further ...

ORDERED, ADJUDGED, DECREED AND DECLARED that none of the mechanic's lienors held any valid lien upon any other part of the Debtor's Property or the proceeds attributable to the same; and it is further

If the Creditors' proposed complaint actually sought relief on behalf of the Debtor's estate against the Banks, any such relief would necessarily conflict with the first three decretal paragraphs of the Claims Order quoted above.[3] Where a claim in a subsequent proceeding would conflict with a litigated order or judgment entered in a prior proceeding between the same parties, the subsequent claim is barred by res judicata. The Creditors had notice of and an opportunity to be heard in the omnibus adversary proceeding and to interpose by appropriate pleadings in that proceeding the claims they now, belatedly, wish to assert. The failure to do so, and the entry of the Claims Order, constitute a bar to claims which would affect rights resolved by the Claims Order.

*The Merits*

While I make no independent assessment of the merits of the proposed complaint, it is apparent from the record before me that the Creditors' assertion that their proposed claims are "well-grounded in law and certainly are colorable" (Application ¶ 10) is inconsistent with adjudications in this proceeding and in the State Court Action and with the conduct of the parties and their counsel, including the Creditors' present counsel.

This Court has rejected analogous claims in the Mechanics' Lienors' Adversary Proceeding. Moreover, the Creditors' proposed complaint here is substantially identical to the complaint in the State Court Action, and the Appellate Division, in affirming dismissal of the State Court Action on grounds of lack of standing, found that the claims asserted were "without merit." (*Id.* at ¶ 28)

Also important is the failure of any party to assert the proposed claims on behalf of the Debtor's estate in either the Trustee's motion for abandonment of claims or the Trustee's omnibus adversary proceeding. Both the abandonment motion and the omnibus adversary proceeding sought relief, on notice to all parties including the Creditors, which

---

**3.** In fact, as noted below, the Creditors' proposed complaint seeks only to recover money damages from the Banks payable to the three Creditors in the amounts of their respective claims. Nothing in this decision effects the rights, if any, of the Creditors to assert claims *in their own behalf* against the Banks, and this Court has given no consideration to the questions whether such claims would be precluded in any way by the fourth decretal paragraph quoted above, the State Court Action or the Mechanics' Lienors' Adversary Proceeding.

was not only inconsistent with, but would constitute preclusion of, the claims which the Creditors now seek to assert on the estate's behalf. The abandonment motion and the omnibus adversary proceeding were brought after thorough investigation by the Trustee and her counsel, who concluded that such claims had no possible merit. Neither the Creditors, nor the Debtor, nor any other party made any argument that the claims now sought to be asserted should not be abandoned, or that the Claims Order should have recognized, in any manner, the validity of the proposed claims. Nor can it be said that the proposed claims are the result of some lately discovered evidence or newly conceived legal theories—the substantially identical complaint in the State Court Action was filed in December 1991, long before entry of the Abandonment Order and the Claims Order.

In short, the belated assurances of merit by counsel for the Creditors must be weighed against the considered judgment of the Trustee and her counsel, after investigation, to abandon these claims on behalf of the estate, as well as the decision by the Creditors' counsel not to press these very same claims on behalf of the Debtor in either the abandonment motion or the Trustee's omnibus adversary proceeding.

To permit the untimely commencement of a complex and difficult lender liability litigation of highly dubious merit, which would indefinitely delay the otherwise imminent final distribution and closing of this estate, would constitute an abuse of the Court's discretion.

### The Defect in the Proposed Complaint

The Creditors' motion must also be denied because it does not, in fact, seek relief on behalf of the Debtor's estate. The proposed verified complaint (Exhibit B annexed to the Creditors' Application) recites in the caption and in paragraph FIRST that the action is brought "on behalf of the estate of Grossinger's Associates." But no relief is sought on behalf of the Debtor's estate, and it appears from the balance of the complaint that the action is brought on behalf of the three Creditors in their individual capacities. The first cause of action is denominated at page 8 "AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF, GOLD MECHANICAL CONTRACTORS, INC.;" the second cause of action is denominated at page 9 "AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF, SULLIVAN SPRINKLER COMPANY, INC.;" the third cause of action is denominated at page 10 "AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF, G.C. MONACO ELECTRIC, INC." In the "WHEREFORE" clause plaintiffs demand judgment on the first cause of action "on behalf of the plaintiff, GOLD MECHANICAL CONTRACTORS, INC.," on the second cause of action "on behalf of the plaintiff SULLIVAN SPRINKLER COMPANY, INC.;" and on the third cause of action "on behalf of the plaintiff G.C. MONACO ELECTRIC, INC.," each in the amounts which the plaintiffs claim are owed to each of the Creditors.

Accordingly, this motion is denied for the independent reason that no relief is proposed to be sought on behalf of the Debtor's estate.

For the foregoing reasons, the Creditors' motion for leave to commence an action on behalf of the Debtor's estate is denied. Counsel for the Banks will settle an order in accordance with the foregoing.