731 S.E.2d 1

Phillip FLEXON, M.D., Respondent,

v.

PHC–JASPER, INC., d/b/a Coastal Carolina Medical Center,
Coastal Carolina Medical Center, Inc., Lifepoint Hospitals,
Inc., and Tenet Healthsystems, Defendants,

Of whom, Coastal Carolina Medical Center, Inc. is, Appellant.

No. 4950.

Court of Appeals of South Carolina.

Submitted Jan. 3, 2012.

Decided March 7, 2012.

Rehearing Denied July 23, 2012.

James D. Myrick, John C. Hawk, & Dana W. Lang, all of Charleston, for Appellant.

William Harvey of Beaufort, for Respondent.

SHORT, J.

Coastal Carolina Medical Center, Inc. (Coastal) appeals the trial court's order denying its motion to compel arbitration in this breach of employment contract action filed by Phillip Flexon, M.D., against Coastal, PHC–Jasper, Inc., d/b/a Coastal Carolina Medical Center (PHC), Lifepoint Hospitals, Inc. (Lifepoint), and Tenet Healthsystems, Inc. (Tenet). We affirm.

## FACTS

Flexon is a resident of Hardeeville, South Carolina, and is licensed to practice medicine as an ear, nose, and throat specialist in South Carolina and Georgia. Coastal is a South Carolina corporation with its principal place of business in Jasper County, and it is wholly owned by Tenet, a Delaware corporation. PHC is a South Carolina corporation doing business as Coastal Carolina Medical Center in Jasper County, and it is the wholly-owned subsidary of Lifepoint, a Tennessee corporation.

On December 18, 2006, Flexon entered into the Physician Employment Agreement (the Agreement) with PHC. The Agreement provided that Flexon would practice for five years "at the medical practice office located at 1010 Medical Center Drive, Hardeeville, South Carolina . . . and such other practice sites in Beaufort and Jasper counties as may be reasonably designated by [PHC] from time to time. . . ." Flexon alleged he had to close an established practice in Savannah, Georgia, in order to accept employment with PHC. The Agreement further provided:

13.4 *Governing Law and Venue:* This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of South Carolina. Any action or claim arising from, under or pursuant to this Agreement shall be brought in the courts, state or federal, within the State of South Carolina, and the parties expressly waive the right to bring any legal action or claims in any other courts. The parties hereto hereby (sic) consent to venue in any state or federal court within the State of South Carolina having jurisdiction over the County for all purposes in connection with any action or proceeding commenced between the parties hereto in connection with or arising from this Agreement.

13.5 *Arbitration:* Except as to the provisions contained in Articles VIII and IX [Disclosure of Information and Covenant Not to Compete], the exclusive jurisdiction of which shall rest with a court of competent jurisdiction in the state where the hospital is located any controversy or claim arising out of or related to this Agreement, or any breach thereof, shall be settled by arbitration in the County, in

accordance with the rules and procedures of alternative dispute resolution and arbitration . . ., and judgment upon any award rendered may be entered in any court having jurisdiction thereof.

Flexon alleges that at the time of negotiating the Agreement, PHC was in negotiations to sell its assets, including the hospital, Coastal Carolina Medical Center, to Tenet. Upon Flexon's commencement of practice at Coastal Carolina Medical Center in March of 2007, PHC allegedly refused to honor commitments it made to Flexon regarding equipment purchases and the recruitment of an audiologist. In June 2007, Lifepoint sold PHC and Coastal Carolina Medical Center to Tenet.

In July 2007, Tenet presented Flexon with an Amendment to and Assignment of Physician Employment Agreement (the Amendment), which purported to assign the Agreement to Tenet. Flexon refused to sign the Amendment. In August 2008, he allegedly delivered a formal notice of termination for cause, pursuant to the Agreement. Flexon received a letter in May 2009 claiming he owed Tenet more than $725,000, and he must cease his practice of medicine in Savannah, Georgia. Flexon filed this action. Coastal filed a motion to compel arbitration. The trial court held a hearing on the motion. The parties stipulated that the arbitration provision in the Agreement failed to comply with the South Carolina Arbitration Act. Coastal argued the Federal Arbitration Act (FAA) governed, alleging the Agreement involved interstate commerce.

The trial court found the Agreement "calls for local medical services to be performed by a Hardeeville resident at a medical facility located in Hardeeville." Distinguishing *Thornton v. Trident Medical Center, L.L.C.*, 357 S.C. 91, 592 S.E.2d 50 (Ct.App.2003), and citing *Arkansas Diagnostic Center, P.A. v. Tahiri*, 370 Ark. 157, 257 S.W.3d 884 (2007), the trial court denied the motion to compel arbitration, finding the Agreement did not involve interstate commerce, and the FAA did not apply. This appeal followed.

## STANDARD OF REVIEW

The question of whether a claim is subject to arbitration is subject to de novo review. *Partain v. Upstate Auto. Grp.*, 386

S.C. 488, 491, 689 S.E.2d 602, 603 (2010). However, the trial court's factual findings will not be reversed on appeal if there is any evidence reasonably supporting the findings. *Id.*

## LAW/ANALYSIS

### I.  FAA

■ Coastal argues the trial court erred in finding the FAA did not apply to the Agreement. We disagree.

Here, the parties stipulated that the South Carolina Arbitration Act does not apply. Therefore, we must determine whether the FAA preempts the state requirements. *See Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 590, 553 S.E.2d 110, 115 (2001) (stating the inquiry does not conclude with the application of the state act, and the court must determine if the federal act preempts state requirements).

■ The FAA provides in pertinent part: "A written provision in any ... contract evidencing a transaction **involving commerce** to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2010) (emphasis added). Unless the parties have contracted otherwise, the FAA applies to any arbitration agreement regarding a transaction that involves interstate commerce, despite the parties' contemplation of an interstate transaction. *Munoz v. Green Tree Fin. Corp.*, 343 S.C. 531, 538–39, 542 S.E.2d 360, 363–64 (2001).

■ "The United States Supreme Court has held that the phrase 'involving commerce' is the same as 'affecting commerce,' which has been broadly interpreted to mean Congress intended to utilize its powers to regulate interstate commerce to its full extent." *Blanton v. Stathos,* 351 S.C. 534, 540, 570 S.E.2d 565, 568 (Ct.App.2002) (citing *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)). "To ascertain whether a transaction involves commerce within the meaning of the FAA, the court must examine the agreement, the complaint, and the surrounding facts." *Zabinski,* 346 S.C. at 594, 553 S.E.2d at 117.

The trial court rejected Coastal's argument that the Agreement here, and its surrounding circumstances, involved interstate commerce under *Thornton v. Trident Medical Center, L.L.C.*, 357 S.C. 91, 592 S.E.2d 50 (Ct.App.2003). In *Thornton*, Trident was experiencing a shortage of cardiovascular physicians and began to recruit physicians, including Thornton, from other parts of the country to Charleston, South Carolina. *Id.* at 93, 592 S.E.2d at 50–51. The Agreement required Thornton to move his practice from Michigan to Charleston, provided financial incentives, and further provided for arbitration in the event of a dispute. *Id.* at 93, 592 S.E.2d at 51. The parties had a dispute, and Thornton filed a declaratory judgment action seeking a determination that the arbitration provision was unenforceable. *Id.* at 94, 592 S.E.2d at 51. This court disagreed, finding that because the Agreement affected interstate commerce, the FAA applied. *Id.* at 95–96, 592 S.E.2d at 52–53. The court relied heavily on the fact that Thornton relocated from Michigan, and the contract provided for him to be compensated for the expenses incurred in moving his personal effects to South Carolina. *Id.* at 97, 592 S.E.2d at 53.

The trial court distinguished *Thornton* and relied on the analysis in *Arkansas Diagnostic Center, P.A. v. Tahiri*, 370 Ark. 157, 257 S.W.3d 884, 892 (2007), in which the Arkansas Supreme Court found there was no interstate commerce involved, and the FAA did not apply to the employment contract at issue. The contract in *Tahiri* contained an arbitration provision, and the Arkansas Diagnostic Center (ADC) attempted to enforce the provision when Dr. Tahiri filed a complaint against ADC for numerous causes of action, including breach of the contract. *Id.* at 886–87. ADC argued interstate commerce was involved because there was "evidence to show that it treated out-of-state patients, received payments from out-of-state insurance carriers, purchased goods from out-of-state vendors, and paid for Dr. Tahiri to travel to seminars outside of Arkansas." *Id.* at 888. The Arkansas Supreme Court found these factors alone insufficient to compel arbitration under the FAA. *Id.* at 891–92. The court stated:

[ADC] failed to demonstrate anything other than that it was a local clinic, with local physicians who had privileges at local hospitals, and treated local patients. . . .

[I]t also failed to prove that Dr. Tahiri's employment facilitated its alleged interstate business activities. . . . Most specific to the employment contract at issue is that ADC was a *local* clinic, which contracted with Dr. Tahiri to provide medical services to its *local* patients. Based on these factors, we hold that Dr. Tahiri's employment agreement . . . did not evidence a transaction involving commerce. . . .

Were this court to hold otherwise, it would equate to a finding that the FAA is applicable to any contract containing an arbitration clause, as it could be argued that every contract involves some nexus to interstate commerce. . . . Instead, the question is simply whether the *contract* evidences a *transaction* involving commerce.

*Id.* at 892 (emphasis in original).

We agree with the trial court that the facts of this case are more akin to those in *Tahiri.* Under the facts surrounding this agreement, Flexon was a South Carolina resident, and Coastal hired him to provide medical services "at the medical practice office located at 1010 Medical Center Drive, Hardeeville, South Carolina . . . and such other practice sites in Beaufort and Jasper counties as may be reasonably designated by [PHC] from time to time. . . ." We agree with the trial court's finding that the Agreement and surrounding facts did not implicate interstate commerce. Therefore, the FAA did not apply to the Agreement. *See Thornton,* 357 S.C. at 96, 592 S.E.2d at 52 ("Our courts consistently look to the essential character of the contract when applying the FAA.").

## II. Employment v. Recruiting Agreements

■ Coastal also argues the trial court erred in distinguishing this case from *Thornton v. Trident Medical Center, L.L.C.,* 357 S.C. 91, 592 S.E.2d 50 (Ct.App.2003), based on the difference between a recruiting contract and an employment contract. We agree, but find no resulting prejudice.

In *Thornton,* this court cited *Selma Medical Center, Inc. v. Fontenot,* 824 So.2d 668 (Ala.2001), and relied in part on the fact that the contract was a recruiting contract in determining it implicated interstate commerce. *Thornton,* 357 S.C. at 98–100, 592 S.E.2d at 53–54.[1] The Arkansas Supreme Court also relied on the difference between an employment contract and a recruiting contract in distinguishing *Thornton* and finding interstate commerce not implicated. *Arkansas Diagnostic Center, P.A. v. Tahiri,* 370 Ark. 157, 257 S.W.3d 884, 891 (2007). The Court stated: "[w]e note that, here, it is only an employment agreement at issue, which obligates Dr. Tahiri to provide medical services, and not a recruitment agreement." *Id.* at 891 n. 3.

■ Here, the trial court also noted that *Thornton* involved a recruiting agreement, and the Agreement here "is clearly and expressly denominated an employment agreement, not a recruiting agreement." To the extent the trial court relied on this distinction, we find the trial court erred. The United States Supreme Court has expressly noted that "[e]mployment contracts, except for those covering workers engaged in transportation, are covered by the FAA." *E.E.O.C. v. Waffle House, Inc.,* 534 U.S. 279, 289, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). The relevant inquiry is whether "the agreement, the complaint, and the surrounding facts" affect interstate commerce. *Zabinski v. Bright Acres Assocs.,* 346 S.C. 580, 594, 553 S.E.2d 110, 117 (2001).

Despite this error, we find the trial court employed the appropriate analysis by reviewing the Agreement and the surrounding circumstances. Therefore, we find no prejudice resulting from the trial court's error in distinguishing between an employment agreement and a recruiting agreement. *See State v. Patterson,* 367 S.C. 219, 231, 625 S.E.2d 239, 245 (Ct.App.2006) ("An error not shown to be prejudicial does not constitute grounds for reversal.").

---

1. In *Selma,* the recruiting contracts involved two physicians moving their practices from South Carolina to Alabama. *Selma,* 824 So.2d at 669. The Alabama Supreme Court found the contracts "were themselves an integral part of the Physicians' movement in the flow of commerce, subjecting their personal-service contracts to the jurisdiction of the FAA." *Id.* at 675.

## CONCLUSION

For the foregoing reasons, the order on appeal is **AFFIRMED.**

**WILLIAMS** and **GEATHERS, JJ.,** concur.