776 S.E.2d 397

Phillip FLEXON, M.D., Respondent,

v.

PHC–JASPER, INC., d/b/a Coastal Carolina Medical Center, Coastal Carolina Medical Center, Inc., Lifepoint Hospitals, Inc., and Tenet Health systems, Inc.,

Of Which Lifepoint Hospitals, Inc., is the Appellant.

Appellate Case No. 2013–002498.
No. 5336.

Court of Appeals of South Carolina.

Heard June 10, 2015.
Decided July 29, 2015.
Rehearing Denied Sept. 16, 2015.

Trudy Hartzog Robertson and Joseph Timothy Belton, both of Moore & Van Allen, PLLC, of Charleston, for appellant.

William B. Harvey, III, of Harvey & Battey, PA, of Beaufort, for respondent.

GEATHERS, J.

In this breach of contract action, Appellant Lifepoint Hospitals, Inc. (Lifepoint) seeks review of the circuit court's denial of its motion to compel arbitration. Lifepoint argues the circuit court incorrectly applied the law-of-the-case doctrine to the motion to compel. Lifepoint also argues the circuit court incorrectly applied the "commerce in fact" test to determine whether the physician services performed by Respondent Phillip Flexon, M.D. affected interstate commerce and, thus, triggered the Federal Arbitration Act (FAA). We affirm.

## FACTS/PROCEDURAL HISTORY

In the fall of 2006, Lifepoint and Flexon negotiated for Flexon's employment with PHC–Jasper, Inc., d/b/a Coastal Carolina Medical Center (PHC), in Hardeeville, South Carolina. Lifepoint owned Province Healthcare Company, which owned PHC. At the time, Flexon had a medical practice in Savannah, Georgia and was on the staff of Memorial University Medical Center (Memorial) in Savannah. However, Flexon was living in Hardeeville and desired to practice medicine there. Therefore, on December 18, 2006, Flexon and PHC executed a contract for Flexon to begin employment with PHC on March 15, 2007, for a five-year term (Agreement). Flexon's medical practice was to be located at 1010 Medical Center Drive in Hardeeville and "such other practice sites in Beaufort and Jasper Counties ... reasonably designated by [PHC] from time to time." The Agreement prohibited any "transfer, assignment or other modification affecting the terms or conditions of the [Agreement]" unless "extenuating circumstances [were] shown to exist."

The Agreement contained the following provisions regarding litigation and arbitration:

13.4 *Governing Law and Venue.* This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of South Carolina. *Any action or claim arising from, under or pursuant to this Agreement shall be brought in the courts, state or federal, within the State of South Carolina,* and the parties expressly waive the right to bring any legal action or claims in any other courts. The parties hereto hereby [sic] consent to venue in any

state or federal court within the State of South Carolina having jurisdiction over the County for all purposes in connection with any action or proceeding commenced between the parties hereto in connection with or arising from this Agreement.

13.5 *Arbitration. Except as to the provisions contained in Articles VIII and IX* [Disclosure of Information and Covenant Not to Compete], the exclusive jurisdiction of which shall rest with a court of competent jurisdiction in the state where the hospital is located[,] *any controversy or claim arising out of or related to this Agreement, or any breach thereof, shall be settled by arbitration* in the County, in accordance with the rules and procedures of alternative dispute resolution and arbitration ..., and judgment upon any award rendered may be entered in any court having jurisdiction thereof.

(emphases added).

After Flexon began employment with PHC, he remained on the staff at Memorial and continued to see patients coming from Georgia. On or about June 30, 2007, Province Healthcare Company, Lifepoint's wholly owned subsidiary, sold PHC to Tenet Healthsystems, Inc. (Tenet). Tenet then presented Flexon with an "Amendment to and Assignment of Physician Employment Agreement" purporting to assign the Agreement to Tenet. Flexon refused to execute this document.[1]

On or about August 17, 2007, PHC changed its name to Coastal Carolina Medical Center, Inc. (Coastal). Approximately one year later, Flexon sent a formal notice of termination for cause to Coastal (formerly PHC). In May 2009, Coastal sent Flexon a letter demanding over $725,000 for amounts Coastal claimed it was owed pursuant to various provisions of the Agreement. Coastal also demanded that Flexon immediately cease working for Memorial.

On May 26, 2009, Flexon filed this breach of contract action against Coastal (a twice-removed subsidiary of Lifepoint),

---

1. Ironically, when Flexon was negotiating the Agreement with Lifepoint's CEO in 2006, Flexon mentioned he was glad he wasn't working for Tenet: "[W]e had multiple conversations about how awful Tenet was. That—the Hilton Head [h]ospital, their problems, and that I—that I was glad that I wasn't working for them."

Lifepoint, and Tenet, alleging that prior to entering into the Agreement, Lifepoint failed to disclose it was in negotiations with Tenet for Tenet's purchase of PHC's (now Coastal's) assets. The Complaint stated Flexon's performance of the Agreement required him to close his practice in Savannah, "where he had privileges at surgical hospitals." The Complaint also alleged that during the negotiation of the Agreement, Lifepoint represented that PHC would purchase certain equipment needed by Flexon in the operating room and would recruit and hire an audiologist to be part of Flexon's practice but PHC later refused to honor these representations.

On October 23, 2009, Coastal filed a motion to compel arbitration, asserting the Agreement contained a valid and enforceable arbitration provision. During the motions hearing, Coastal stipulated that the arbitration provision in the Agreement violated the notice requirements of the South Carolina Arbitration Act but argued the FAA applied to the arbitration provision and, thus, required arbitration of the parties' claims. To support its argument that the Agreement evidenced a transaction involving interstate commerce, triggering the FAA,[2] Coastal referenced the Complaint's allegations that (1) Flexon had to "discontinue, close, and leave an established practice in Savannah, Georgia, where he had privileges at surgical hospitals" in order to sign the Agreement and (2) Lifepoint knew that Flexon "would have to close and terminate an established practice in Savannah in order to fulfill his obligations under the [Agreement]."

Additionally, Coastal referred to three of Flexon's interrogatory responses:

[I]n an answer to an interrogatory that we filed, he said that many Savannah doctors stopped referring patients to Dr. Flexon after a [stock] purchase agreement occurred between our clients. I think the implication here is that he was getting business across state lines, and was relying on that business in order to have a successful practice.

---

**2.** *See Towles v. United HealthCare Corp.*, 338 S.C. 29, 35, 524 S.E.2d 839, 843 (Ct.App.1999) ("For the FAA to apply, an agreement must 'evidenc[e] a transaction involving commerce,' specifically interstate commerce." (alteration by court) (quoting 9 U.S.C.A. § 2)).

On Interrogatory Four, which was a particularized state-ment of damages, he mentions that he lost six weeks of his salary while he had to move his practice from Savannah to Coastal, and then move it back again once he quit.

Interrogatory Nine, which was about availability of equip-ment in the E.R., which is one of the complaints Dr. Flexon had against my client. He said that availability of equip-ment became so unreliable, [Flexon] began taking his com-plicated cases to Memorial. . . . So, while he was working for our client, he was sending his complicated cases and per-forming those surgeries that were being billed by our hospital, performing that surgery in Savannah.

Subsequently, Lifepoint's counsel briefly spoke in support of Coastal's motion to compel:

[COUNSEL]: Judge, if I may; I'm not presenting argu-ment. This is not our motion today, but we pled this as an affirmative defense as well, that this matter should be submitted to arbitration. I think it goes to arbitration and it should. We support this motion. It goes as to all parties. If I have to separately move, I can do that, but—

whereupon counsel was cut off by the presiding judge (the first circuit court judge). The following colloquy then tran-spired:

THE COURT: I think you ought to do that, because obviously [Flexon] isn't on notice of that. I understand that's your position, but all I can deal with is this motion today. But I understand that. I think you need to file your own motion. And I realize you pled it.

[COUNSEL]: Yes, sir.

THE COURT: But he wasn't prepared to argue, except as against this motion today. It might be an identical argu-ment, but—

[COUNSEL]: I think that likely it is. So I will make it.

On June 17, 2010, Lifepoint filed its own motion to compel arbitration. Subsequently, the first circuit court judge issued an order denying Coastal's motion. The first circuit court judge based his decision on two grounds: "There is no lan-guage in the [Agreement that] mentions, conditions, requires, affects or involves interstate commerce. . . . Further, . . . the parties to [the Agreement] specifically agreed to litigate any

dispute arising from, under or pursuant to [the Agreement] in the courts of South Carolina."[3] Coastal appealed the first circuit court judge's order to this court, which affirmed the order. *Flexon v. PHC–Jasper, Inc.,* 399 S.C. 83, 731 S.E.2d 1 (Ct.App.2012) (*Flexon I*). This court concluded the Agreement and surrounding facts did not implicate interstate commerce and, therefore, the FAA did not apply to the Agreement. 399 S.C. at 89, 731 S.E.2d at 4. After the case was remitted, Lifepoint withdrew its motion to compel arbitration without prejudice and took Flexon's deposition.

During his deposition, Flexon admitted his performance under the Agreement involved providing medical services in both South Carolina and Georgia. When asked about problems resulting from trying to transport a practice from Georgia to South Carolina, Flexon stated, "[T]he practice wasn't transported. The practice always existed in both states before and after. It really did. I mean, it was—you know, it—by—by accident there's a river and a state line, but the practice always involved both states." Flexon also stated that he had "plenty of patients coming from Georgia." Moreover, Flexon indicated that Lifepoint's CEO, Eric Deaton, insisted Flexon remain on Memorial's staff. Therefore, Flexon often had to do rounds at both Coastal and Memorial.

Lifepoint then filed with the circuit court its renewed motion to compel arbitration, attaching the above-referenced excerpts from Flexon's deposition. Several weeks later, Coastal filed a motion for relief from judgment pursuant to Rule 60(b), SCRCP, seeking relief from the circuit court's previous order denying arbitration due to "newly discovered evidence," i.e., Flexon's deposition testimony. The presiding

---

3. Coastal did not appeal this second ground, i.e., the parties agreed to litigate any dispute "arising from, under or pursuant to [the Agreement] in the courts of South Carolina." Rather, Coastal merely addressed this issue in its Reply Brief, asserting that the provision in question "concern[ed] only those portions of the Agreement carved out of the Arbitration provision" in Article XIII, i.e. *"Except as to the provisions contained in Articles VIII and IX, the exclusive jurisdiction of which shall rest with a court of competent jurisdiction in the state where the hospital is located,* any controversy or claim arising out of or related to this Agreement, or any breach thereof, shall be settled by arbitration . . . ." (emphasis added).

judge (the second circuit court judge) conducted a hearing on both motions and later issued an order denying them.

In his order, the second circuit court judge stated,

As acknowledged by [Coastal] in its appeal, the parties knew that [Flexon] was receiving referrals and other patients from the Savannah area while he was working [for Coastal]. With these facts before it, the South Carolina Court of Appeals ruled that "We agree with the trial court's finding that the Agreement and the surrounding facts did not implicate interstate commerce."

The second circuit court judge further found that the "facts and testimony from [Flexon's] deposition argued by [Lifepoint and Coastal] are not substantially different than those before the court in the prior rulings."

The second circuit court judge concluded that if Lifepoint and Coastal believed Flexon's deposition "was necessary for a full review of this issue, they could have sought to present that contention to the lower and appellate courts when this issue was before them." He also concluded that this court's decision on the FAA's applicability to the Agreement was the law of the case. Lifepoint filed a motion to alter or amend this order, which the second circuit court judge denied. This appeal followed.

## ISSUES ON APPEAL

1. Did the circuit court err in concluding that Lifepoint failed to preserve its right to independently seek arbitration?

2. Did the circuit court err in concluding that the decision of this court in *Flexon I* was the law of the case? [4]

3. Did the circuit court err in failing to apply, or applying incorrectly, the "commerce in fact" test to determine whether Flexon's services affected interstate commerce and, thus, triggered the FAA?

## STANDARD OF REVIEW

■■■■ "This court reviews questions of law de novo." *Proctor v. Steedley*, 398 S.C. 561, 573, 730 S.E.2d 357, 363

---

4. We are combining Lifepoint's Issues II and IV from its brief.

(Ct.App.2012). "In other words, a reviewing court is free to decide questions of law with no particular deference to the trial court." *Id.* Furthermore, "[t]he question of the arbitrability of a claim is an issue for judicial determination, unless the parties provide otherwise." *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001). "The determination of whether a claim is subject to arbitration is subject to *de novo* review." *Gissel v. Hart*, 382 S.C. 235, 240, 676 S.E.2d 320, 323 (2009). "Nevertheless, a circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports the findings." *Id.*

## LAW/ANALYSIS

### I. Preservation of Right to Seek Arbitration

Lifepoint interprets the second circuit court judge's order as implying Lifepoint failed to preserve its right to independently seek arbitration. In response, Lifepoint argues (1) several consent orders in this case have preserved Lifepoint's right to seek arbitration independent of Coastal's motion and allowed Lifepoint to engage in written discovery and depositions without waiving its right to arbitration [5] and (2) it has prosecuted

---

5. The first "Consent Scheduling Order of the Parties" was not executed until June 16, 2010, *after* the hearing on Coastal's motion to compel arbitration. This order includes a provision stating,

> The parties and this [c]ourt recognize that Defendant has moved to compel arbitration, and that this consent order in no way constitutes a waiver of Defendant's asserted right to compel arbitration. The parties agree that the conduct of written discovery or depositions will not be evidence of a waiver of Defendants [sic] asserted right to arbitration. The Plaintiff also agrees that engaging in discovery pursuant to this order does not constitute prejudice or undue burden.

Lifepoint executed its own motion to compel arbitration on the same day the parties executed the consent order but did not file the motion until the following day.

The "Amended Consent Scheduling Order," dated September 18, 2012, is similar:

> The parties and this [c]ourt recognize that one of the Defendants may move to compel arbitration, and that this consent order in no way constitutes a waiver of Defendant's asserted right to compel arbitration. The parties agree that the conduct of written discovery or depositions will not be evidence of a waiver of Defendant's asserted right to arbitration. The Plaintiff also agrees that engaging in discovery pursuant to this order does not constitute prejudice or undue burden.

its arbitration motion pursuant to the directive of the first circuit court judge.

We acknowledge the order now on appeal includes language implying Lifepoint waived its right to arbitration by engaging in discovery without reservation or limitation. However, this language was not the basis for the denial of Lifepoint's motion to compel arbitration. Rather, the second circuit court judge based his conclusion that this court's opinion in *Flexon I* was the law of the case on two grounds: (1) the facts presented in the hearing on Lifepoint's motion were not substantially different from the facts presented in the hearing on Coastal's motion and (2) Lifepoint effectively abandoned its opportunity to present Flexon's deposition testimony by failing to depose him prior to the hearing on Coastal's motion. We will address these two grounds, as well as the first circuit court judge's directive for Lifepoint to file its own motion, in the following section of this opinion.

## II. Law of the Case

Lifepoint asserts the second circuit court judge erred in concluding this court's opinion in *Flexon I* was the law of the case. Lifepoint argues Flexon's deposition testimony showed facts substantially different from the facts presented to the first circuit court judge. While we agree the facts were substantially different, the deposition testimony should have been presented to the first circuit court judge. Therefore, the second circuit court judge did not commit reversible error in concluding that *Flexon I* was the law of the case.

"Under the law-of-the-case doctrine, a party is precluded from relitigating, after an appeal, matters that were either not raised on appeal, but should have been, or raised on appeal, but expressly rejected by the appellate court." *Judy v. Martin*, 381 S.C. 455, 458, 674 S.E.2d 151, 153 (2009) (citing 5 C.J.S. *Appeal & Error* § 991 (2007)). In other words, "[t]he doctrine of the law of the case prohibits issues [that] have been decided in a prior appeal from being relitigated in the trial court in the same case." *Ross v. Med. Univ. of S.C.*, 328

The comparable provisions in the "Second Amended Consent Scheduling Order" and "Third Amended Consent Scheduling Order" are identical to this provision.

S.C. 51, 62, 492 S.E.2d 62, 68 (1997); *see In re Grossinger's Assocs.*, 184 B.R. 429, 434 (Bankr.S.D.N.Y.1995) ("Closely related to the doctrines of claim and issue preclusion is the doctrine of law of the case, which holds that a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation." (quotation marks omitted)). While the doctrine has been referenced as discretionary,[6] it is recognized that principles "of authority ... do inhere in the 'mandate rule' that binds a lower court on remand to the law of the case established on appeal." 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478 (2d ed.2002).

■ "The law of the case applies both to those issues explicitly decided and to those issues [that] were necessarily decided in the former [appeal]." *Ross*, 328 S.C. at 62, 492 S.E.2d at 68; *see In re Grossinger's Assocs.*, 184 B.R. at 434 ("The doctrine applies to all issues decided expressly or by necessary implication."). However, "[t]he prior adjudication does not preclude consideration on a subsequent appeal of questions expressly left open or reserved by the court." 5 C.J.S. *Appeal and Error* § 994 (2007); *see also Searles' Adm'r v. Gordon's Adm'r*, 156 Va. 289, 157 S.E. 759, 761 (1931) ("Every decision of [the appellate] court, whether it be upon an interlocutory or a final decree, is in its nature final, except, possibly, where [the] court disposes of only a part of the case

---

6. *See S. Ry. Co. v. Clift*, 260 U.S. 316, 319, 43 S.Ct. 126, 67 L.Ed. 283 (1922) ("The prior ruling may have been followed as the law of the case, but there is a difference between such adherence and res adjudicata. One directs discretion: the other supersedes it and compels judgment. In other words, in one it is a question of power, in the other of submission."); *Slowinski v. Valley Nat'l Bank*, 264 N.J.Super. 172, 624 A.2d 85, 89 (App.Div.1993) ("Law of the case ... operates as a discretionary rule of practice and not one of law." (quotation marks omitted)); 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478 (2d ed. 2002) ("So long as the same case remains alive, there is power to alter or revoke earlier rulings."); 5 C.J.S. *Appeal and Error* § 991 (2007) ("The doctrine is discretionary rather than mandatory. Nonetheless, it should be disregarded only upon a showing of good cause for failure timely to request reconsideration of the original appellate decision, and only as a matter of grace rather than right." (footnotes omitted)).

at one term, and reserves it for further and final action at another.").

The policy behind the law of the case is to "promote[ ] the finality and efficiency of the judicial process by protecting against the agitation of settled issues." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (quotation marks omitted). "The rule of the law of the case is a rule of practice, based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter." *United States v. U.S. Smelting Ref. & Mining Co.*, 339 U.S. 186, 198, 70 S.Ct. 537, 94 L.Ed. 750 (1950). "Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. These rules do not involve preclusion by final judgment; instead, they regulate judicial affairs before final judgment." *In re Grossinger's Assocs.*, 184 B.R. at 434.

> The "law of the case" rule is based on the salutary and sound public policy that litigation should come to an end. It is predicated on the premise that "there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions or speculate of chances from changes in its members," and that *it would be impossible for an appellate court "to perform its duties satisfactorily and efficiently" and expeditiously "if a question, once considered and decided by it were to be litigated anew in the same case upon any and every subsequent appeal" thereof.*
>
> While the "law of the case" doctrine is not an inexorable command, a decision of a legal issue or issues by an appellate court establishes the "law of the case" and must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, unless *the evidence on a subsequent trial was substantially different*, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.[7]

---

**7.** Lifepoint does not argue that this court's opinion in *Flexon I* was clearly erroneous or that the law has changed. It merely argues that the facts this time around are substantially different.

*White v. Murtha,* 377 F.2d 428, 431–32 (5th Cir.1967) (emphases added) (footnotes omitted).

The South Carolina Supreme Court has also recognized that the doctrine does not apply when the evidence is substantially different on a second appeal. In *Nelson v. Charleston & Western Carolina Railway Co.,* 231 S.C. 351, 357, 98 S.E.2d 798, 800 (1957), the court stated that the doctrine

> has no application where the facts relating to the question decided are *substantially different* on a second appeal. In order to escape the application of the doctrine, however, there must be a material change in the evidence. Additional evidence cumulative in nature will not take the case out of the rule and constitute a material change where *evidence of the same class and character* was considered on the former appeal.

(emphases added). Further,

> [o]pposing forces tug at the theory that new evidence can justify departure from the law of the case. It is easy to understand that new evidence can undermine the foundations of an initial decision. *The needs for stability and procedural efficiency, however, counsel that a persuasive justification should be required to support consideration of the new evidence.* Reconciliation of these competing forces calls for discretion, and the exercise of discretion has not yielded any basis for easy generalization. . . .
>
> . . . . *Evidence that could have been presented earlier commonly is not considered, in keeping with the general rules that discourage slovenly or ill-considered approaches to the first trial.* Beyond these relatively easy points, some decisions set a high threshold for considering new evidence, invoking the "manifest injustice" standard discussed below or even the standard for vacating a judgment. And other decisions invoke the mandate principle by ruling that new evidence cannot be considered if it bears on an issue that was not left open by an appellate decision remanding for further proceedings on other issues.

18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478 (2d ed.2002) (emphases added) (footnotes omitted); *see Yankton Sioux Tribe v. Podhradsky,* 606 F.3d 994, 1005 (8th Cir.2010) ("It is

not clear that any of the defendants' evidence was truly 'new' in the sense that it could not have reasonably been developed and presented in earlier stages of this litigation."); *Smith Int'l, Inc. v. Hughes Tool Co.*, 759 F.2d 1572, 1579 (Fed.Cir. 1985) (holding the district court did not abuse its discretion in applying the "newly discovered" evidence standard of Rule 60(b)(2), FRCP, in determining the appellant had not shown the existence of "substantially different" evidence that justified an exception to the law-of-the-case doctrine); *id.* ("The law-of-the-case doctrine is designed to provide finality to judicial decisions. It thus serves the same objective as the 'newly discovered' requirement in Rule 60(b)(2)." (citation and quotation marks omitted)); *id.* ("In this case, [the appellant] is seeking to reopen factual issues finally laid to rest by the Ninth Circuit in 1982 on the basis of *evidence it could have discovered with due diligence* at least by the time of trial of this case in 1977. The district court was fully justified in rejecting this attempt." (emphasis added)).

 Here, the second circuit court judge ruled Flexon's deposition testimony was not "substantially different" than the evidence before the first circuit court judge. Nevertheless, Lifepoint argues the interrogatory responses presented as evidence before the first circuit court judge did not show that Flexon was "importing [Georgia] patients into South Carolina or that he performed medical services in Georgia as an obligation under the terms of the Agreement," whereas the deposition testimony presented to the second circuit court judge showed that Flexon's *performance of the Agreement* involved both South Carolina and Georgia. Specifically, Lifepoint points to Flexon's interrogatory response, presented to the first circuit court judge, indicating that after the hospital's sale to Tenet, "many Savannah doctors stopped referring patients to [Flexon] because of Tenet's horrible reputation." Lifepoint notes this statement "is limited to doctor referrals rather than any factual representation about the state residency of any *patients* actually referred."

Similarly, Lifepoint highlights Flexon's interrogatory response indicating Coastal's provision of equipment was so unreliable that Flexon started taking his complicated cases to Memorial. Lifepoint contends this statement "does not evidence that [Flexon] *was actually obligated under the terms of*

*the Agreement* to maintain medical staff privileges at Memorial or perform medical services for patients at Memorial," whereas Flexon's deposition testimony provides, for the first time, evidence that his performance of the Agreement involved more than one state.

For these reasons, we agree with Lifepoint that the deposition testimony presented to the second circuit court judge shows facts that are substantially different from the facts presented to the first circuit court judge. In his deposition, Flexon stated that Lifepoint's CEO insisted Flexon remain on Memorial's staff. Therefore, Flexon often had to do rounds at both Coastal and Memorial. Unlike the facts presented to the first circuit court judge, these facts show that Flexon's *performance of the Agreement* required Flexon to provide medical services in two states. Further, the medium of a deposition was more conducive to a complete presentation of the facts than the interrogatory responses; hence, these two types of evidence were not necessarily "of the same class and character." *Nelson,* 231 S.C. at 357, 98 S.E.2d at 800.

Nevertheless, the facts gleaned from Flexon's deposition testimony should have been developed before, and raised in, the hearing on Coastal's motion to compel. *See Yankton Sioux Tribe,* 606 F.3d at 1005 ("It is not clear that any of the defendants' evidence was truly 'new' in the sense that it could not have reasonably been developed and presented in earlier stages of this litigation."); 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478 (2d ed. 2002) ("Evidence that could have been presented earlier commonly is not considered, in keeping with the general rules that discourage slovenly or ill-considered approaches to the first trial."). Therefore, the second circuit court judge properly held that *Flexon I* was the law of the case.

Additionally, the second circuit court judge properly concluded that Lifepoint's failure to timely depose Flexon "cannot now be grounds for reargument of issues about which the parties spent two years litigating in the Court of Appeals." *See Dean v. Heritage Healthcare of Ridgeway, LLC,* 408 S.C. 371, 387, 759 S.E.2d 727, 736 (2014) ("Parties may waive their right to enforce an arbitration clause."); *Carlson v. S.C. State*

*Plastering, LLC,* 404 S.C. 250, 257, 743 S.E.2d 868, 872 (Ct.App.2013) ("There is no set rule as to what constitutes a waiver of the right to arbitrate; the question depends on the facts of each case." (quotation marks omitted)); *Dean,* 408 S.C. at 388, 759 S.E.2d at 736 (holding a party seeking to prove a waiver of a right to arbitrate carries a heavy burden and must show prejudice through an undue burden caused by delay in demanding arbitration). Prior to the hearing on Coastal's motion to compel, Lifepoint could have (1) taken Flexon's deposition for the limited purpose of establishing the arbitrability of Flexon's claims and (2) presented its own motion to compel arbitration or joined in Coastal's motion. Alternatively, Lifepoint could have requested this court to hold Coastal's appeal in abeyance until Lifepoint's motion to compel could be heard. Instead, the other parties' time and resources were devoted to obtaining a ruling from this court concerning the arbitrability of this dispute.

We acknowledge the first circuit court judge's directive to Lifepoint to file its own motion to compel arbitration. However, by that time, Lifepoint had already abandoned any opportunity to file its own motion to compel arbitration or join in Coastal's motion. Lifepoint had kept silent for over seven months after Coastal first filed its motion to compel arbitration and over one year after Flexon filed the complaint. *Cf. Dean,* 408 S.C. at 388, 759 S.E.2d at 736 ("We find that Appellants did not delay in filing their demand for arbitration.... [A]fter Respondent filed her formal complaint, Appellants moved to compel arbitration at their first opportunity. Further, even were we to find that Appellants should have filed the motion to compel arbitration immediately after Respondent filed the [Notice of Intent to file a medical malpractice suit against Appellants], rather than after Respondent filed the complaint, Respondent has shown no prejudice or undue burden to her from the four month delay.").

Lifepoint does not argue it was prevented from either joining in Coastal's motion to compel or taking Flexon's deposition prior to the hearing on Coastal's motion. Further, while Lifepoint's interests in pursuing arbitration were aligned with Coastal's interests, this did not excuse Lifepoint from taking the steps necessary to protect its own interests in a timely manner. Therefore, whether the result is based on the

law-of-the-case doctrine or on waiver, fundamental fairness requires Lifepoint to be bound by this court's opinion in *Flexon I.*

Based on the foregoing, Lifepoint has failed to convince this court that the second circuit court judge erred in denying the motion to compel arbitration. *See Duckett by Duckett v. Payne,* 279 S.C. 94, 96, 302 S.E.2d 342, 343 (1983) ("[T]he appellant carries the burden of convincing this [c]ourt that the trial court erred."). Therefore, we need not reach the question of the FAA's applicability to this case. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address the remaining issues on appeal when resolution of a prior issue is dispositive).

## CONCLUSION

Accordingly, we affirm the circuit court's order.

**AFFIRMED.**

THOMAS and KONDUROS, JJ., concur.