## 9489

### SHEFFIELD *ET AL.* v. GRIEG.

#### (89 S. E. 664.)

1. WILLS — CONSTRUCTION—POWER OF DISPOSITION—EXTINGUISHMENT.— Where entire estate was left to widow during her widowhood with the right to dispose of any property as she may think best to pay debts or support herself and children while a widow, a contract by her with two of her sons, whereby she conveyed to them to hold during her widowhood 793 acres of the estate lands, on condition they would support her and her children, terminable on their default or death of either party, was a mere lease on condition and did not extinguish as to these lands, after termination of the contract, the power of disposal under the will.

2. WILLS—CONSTRUCTION—POWER TO MORTGAGE.—Under such a will, the widow had power to mortgage only her own interest, but not that of her children.

3. TENANCY IN · COMMON—ADVERSE POSSESSION BY COTENANT—NECESSITY OF OUSTER.—Until ouster of one cotenant by another, the statute of limitations does not begin to run.

4. TENANCY IN COMMON—ESTOPPEL BETWEEN COTENANTS.—If certain cotenants use less land than they are entitled to, no estoppel arises in favor of other cotenants.

5. MORTGAGES—FORECLOSURE—JUDGMENT—CONCLUSIVENESS—PARTIES.—A judgment of foreclosure is not binding on persons not parties.

Before HON. F. L. WILLCOX, special Judge, Abbeville, October, 1915.   Affirmed.

Action for partition by Emma J. Sheffield and others against Mrs. Irene R. Grieg.   From a judgment for plaintiffs, defendant appeals.

The surviving children of George H. Kay were G. W. H. Kay, C. B. Kay, J. R. Kay, J. H. Kay, and Emma J. Sheffield, all minors at the time of his death.   This suit is brought by Emma J. Sheffield, J. H. Kay, and Robert H. Kay, the only child of J. R. Kay, who predeceased Jane Kay.   Plaintiffs claimed, among other things, that the making of the agreement or conveyance of the 793 acres referred to in the opinion was a full exercise and renunciation of the power contained in the will to dispose of the land, whether by mortgage or otherwise, and that the power given by the will did not include power to mortgage.

*Messrs. Grier, Park & Nicholson,* for appellant, cite: *As to powers:* Washburn R. P., secs. 1657, 1658, 1665, 1667, 1679.   *Effect of alienation:* 36 S. C. 107; 27 S. C. 514; 33 S. C. 313 and 414; 19 S. C. 297; 21 S. C. 1; 29 S. C. 466; 56 S. C. 82.   *Intention of testator:* 19 S. C. 297. *Power to mortgage embraced in power to sell:* 1 Bail. Eq. 468; 18 Am. Rep. 75; 60 N. J. Eq. 471; 99 U. S. 48; 2 DeS. Eq. 460; 1 Strob. Eq. 41; 27 S. C. 522; 12 Rich. Eq. 349; 56 S. C. 85; 101 S. C. 196; 31 Cyc. 1072.   *Purchase without notice:* 23 S. C. 500; 34 S. C. 151; 31 S. C. 147; 38 S. C. 457; 61 S. C. 265; 60 S. C. 172, 178.   *Statute of limitations:* 50 S. C. ·127; 78 S. C. 154; 85 S. C. 373. *Estoppel:* 96 S. C. 83.

*Mr. Wm. P. Greene,* for respondent, cites: *As to construction of power:* 31 Am. St. Rep. 762; 43 S. C. 271; 51 S. C.

366; 6 S. C. 189; 21 N. J. Eq. 574; 129 Mass. 286; 46 Atl. 648; 60 Md. 150; 38 Am. Rep. 340; 50 Am. Rep. 456; 56 Am. Rep. 456; 2 Perry Trusts, sec. 768. *Necessary parties to action for foreclosure:* Jones Mt'ges. (3d ed.), sec. 1558; 2 Hilliard Mt'ges. 129-135; 63 Am. Dec. 373. *Release of power:* 33 S. C. 425; 36 S. C. 100. *Notice of breach of trust:* 24 S. C. 179; 25 S. C. 340; 35 S. C. 422; 100 S. C. 226; 28 A. & E. Enc. of L. 1126.

August 10, 1916.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

George H. Kay died in 1881, leaving of force his last will and testament, in which he provided:

"I will to my beloved wife, Jane Kay, for and during her natural life or widowhood, my entire estate, both real and personal. My said wife, Jane, to have the right to dispose of any property as she may think best for the purpose of paying all just debts or supporting and maintaining herself and children while she remains my widow, and should my said wife marry again, then I desire that my estate shall be divided as follows, viz.: My wife, Jane, to have five dollars, and the balance of my estate to be equally divided between my children, and if my property can be divided without a sale I would prefer that it should be so done and valued and each one, that is, my wife, Jane, and my children, to take their shares in property, but, if in the opinion of my executors, said division cannot be otherwise, I direct that my entire estate be sold at such time and upon such terms as my executors may think best, and the proceeds divided as before directed, and should my wife, Jane, continue my widow during her natural life, then at her death I desire that the entire property remaining at her death should be equally divided between my children under restriction hereafter mentioned. I desire that the portions falling to my

children; whenever the division shall be made, shall be to my said children during their natural lives and then to the heirs of their bodies, and should any of my children die leaving no heirs of their bodies, the shares coming to such to be equally divided between the surviving brothers or sisters, as the case may be, under the restrictions before named, and lastly, I do appoint my wife, Jane Kay, my son, G. W. H. Kay, and my son, C. B. Kay, executrix and executors of this, my last will and testament."

In November, 1887, Mrs. Jane Kay, his widow, made a contract with two of her sons, C. B. Kay and G. W. H. Kay, in which she conveyed to them to hold during her present widowhood, 793 acres of the estate lands on the condition that the grantees should support and maintain the said Jane Kay and such of her children as remain with her during the present term of her widowhood, in a comfortable manner, such as she and they have always been accustomed to, and at the termination of such widowhood we agree to release all interest to said premises under and by virtue of this writing.

The contract also provided:

"In case of the death of either of said G. W. H. Kay or C. B. Kay, this contract shall cease on the part of such one, and if both should die before the termination of the widowhood of the said Jane Kay, then the contract to support her and her children shall cease as to both of the said parties, the said Jane Kay in that event having the right to take possession of said land as if this writing had not been made."

In January, 1888, the grantees in that deed reconveyed to Mrs. Jane Kay 200 acres of this land. The deed of reconveyance sets out that Mrs. Kay is unable to procure the necessities of life for herself and children. This deed of reconveyance conveys also the interest of the grantor (two-fifths) in remainder and reversion. A few days afterwards Mrs. Kay made her note to E. H. Booker, for supplies and secured by a mortgage of the 200 acres. This

mortgage was foreclosed and the land bought in by one of the assignees of the mortgage, and by him sold to the defendant-appellant.    In 1914 Mrs. Jane Kay died, and this action was brought by the plaintiffs for partition, alleging that they were entitled to three-fifths interest in the land.    The defendant claimed the title and raised such questions as will be stated in consideration of the exceptions.    The presiding Judge found for the plaintiff the three-fifths interest. Defendant appealed.    Appellant states these questions:

1. "Did Mrs. Kay renounce or extinguish her power under the will?"    The land was given to Mrs. Kay, not for her sole benefit, but also for the benefit of her children. She was, therefore, a trustee for her children.    By the contract she undertook to substitute two trustees for herself.    The will gave no power of substitution. The contract was in effect a mere lease, terminable upon failure to afford support and by the death of either party or the marriage of Mrs. Kay.    The condition failed, and the land in controversy surrendered, together with two-fifths interest in remainder.    If the contract had been in form a lease, no one could have supposed that the execution of the lease destroyed the power to make a new lease, either when it terminated by its own limitations or forfeited for nonpayment of rent.

2. "Power to mortgage."    That means did Mrs. Kay have the power to mortgage the land?    To that question the answer is that so far as her own interest was concerned, she did; so far as the interests of her children were concerned, she did not.

Was there a power to mortgage, given by the will?    The power to mortgage was not given in the power contained in the will.    In *Manning* v. *Screven,* 56 S. C., at page 84, 34 S. E., at page 25, it is said:

"We must construe the instrument creating the power in the light of the purpose for which it was created, in order

to reach the intent of the donor as to the extent of the power and the mode of execution."

The estate given to the wife was for "the purpose of paying debts and the support and maintenance of herself and children." It is possible that the payment of debts might have permitted a mortgage. In this case the debts were paid and that purpose is out of this case. The execution of a mortgage for support and maintenance is an exceedingly hazardous thing to do. If an estate does not afford support and maintenance unincumbered, how can it pay the debt and interest on the debt and still afford support and maintenance? Land may be sold for its full value. It is a matter of common knowledge that it is rarely mortgaged for its value. There is no express power to mortgage and the purpose of the power forbids it. Besides this, Mrs. Kay had a life estate, and we find in Am. &. Eng. Ency. of Law, vol. XXII, page 1156:

"The rule seems to be settled that where a power of disposal accompanies a bequest or devise or conveyance of a life estate in property, the power of disposal is only coextensive with the estate given, unless there are other words indicating that a larger power was intended."

In a note to that we find a citation to *Brant* v. *Virginia Coal & Iron Company,* 93 U. S. 326, 23 L. Ed. 927. This case sustains the text. In the Brant case we find:

"In *Smith* v. *Bell,* reported in 6 Peters, 68 (8 L. Ed. 322), the testator gave all his personal estate, after certain payments, to his wife, 'to and for her own use and disposal absolutely,' with a provision that the remainder after her decease should go to his son. The Court held that the latter clause qualified the former, and showed that the wife only took a life estate. In construing the language of the devise, Chief Justice Marshall, after observing that the operation of the words 'to and for her own use and benefit

and disposal absolutely,' annexed to the bequest, standing alone, could not be questioned, said, 'But suppose that the (she) testator had added the words "during her natural life," these words would have restrained those which preceded them, and have limited the use and benefit, and the absolute disposal given by the prior words, to the use and benefit and to a disposal for the life of the wife. The words, then, are susceptible of such limitation. It may be imposed on them by other words. Even the words "disposal absolute" may have their character qualified by restraining words connected with and explaining them, to mean such absolute disposal as a tenant for life may take.' "

In this case the limitation was not only to life, but widowhood. It would be a strange construction, and altogether untenable to say that the widow whose estate was limited to her widowhood could defeat the remaindermen by a sale or mortgage in contemplation of a new and impeded second marriage. So far as she had a personal interest, she could bind her interest by a sale or mortgage. That right arises not from the will, but from the general power (unless restrained by the instrument) of a person to sell or incumber his or her individual interest.

3. Purchaser without notice. The plaintiff claimed that the supplies were not for support and maintenance, and the defendant claims she had no notice as to the purpose for which the money was borrowed. Inasmuch as we have held that Mrs. Kay had no power to mortgage the land beyond her life or widowhood, it makes no difference for what purpose the debt was made.

4. The statute of limitations. The appellant was entitled to two-fifths interest in the estate, and she is held to be a tenant in common with respondents. The statute does not begin to run until ouster, and there is no evidence of ouster.

5. Estoppel. Estoppel is claimed to arise from possession of a part of the land by the children of the testator.

15—S.C. 105.

They had an interest in the land, and if they used a part of the land instead of the proceeds of the land, no estoppel arises.   They used less land by 200 acres than they were entitled to.   It is said they received the supplies for which the mortgage was given.   Only a small part, if any, and then some were minors.   The judgment of foreclosure is not binding on these respondents. They were not parties.

4, 5

The judgment is affirmed in result.

MESSRS. JUSTICES HYDRICK, WATTS and GAGE concur.

MR. CHIEF JUSTICE GARY concurs in the result.