# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Maybank 2754, LLC, Appellant,

v.

Eugene J. Zurlo, Individually and as Co-Trustee of the Eugene J. Zurlo Living Trust Dated December 11, 1997; 1776, LLC; Beach Fenwick, LLC; The Beach Company; Seamon, Whiteside & Associates, Inc.; Penny Creek Associates, LLC; John Doe and Mary Roe, Respondents.

Appellate Case No. 2020-001030

_____

Appeal from Charleston County
Bentley Price, Circuit Court Judge

_____

Opinion No. 6081
Heard March 4, 2024 – Filed August 7, 2024

_____

## REVERSED AND REMANDED

_____

Scarlet Bell Moore, of Greenville, and Jason M. Tarokh, of Tampa, Florida, for Appellant.

Brian C. Duffy, Patrick Coleman Wooten, and Blake Abernethy McKie, all of Duffy & Young, LLC, of Charleston, for Respondent Eugene J. Zurlo.

Cheryl D. Shoun and Alexandra Harrington Austin, both of Maynard Nexsen, PC, of Charleston, and Chase Caleb Keibler, of Keibler Law Group LLC, of Irmo, for Respondent The Beach Company.

Kent Taylor Stair and Jordan N. Teich, both of Copeland, Stair, Valz & Lovell, LLP, of Charleston, for Respondent Seamon, Whiteside & Associates, Inc.

Jason S. Smith and Brian A. Hellman, both of Hellman & Yates PA, of Charleston, for Respondent 1776, LLC.

Thomas Bacot Pritchard, of Vernis & Bowling of Columbia, LLC, of Charleston, for Respondent Penny Creek Associates, LLC.

Chase Caleb Keibler, of Keibler Law Group LLC, of Irmo, and Cheryl D. Shoun, of Maynard Nexsen, PC, of Charleston, for Respondent Beach Fenwick, LLC.

---

**GEATHERS, J.:**  Appellant Maybank 2754, LLC (Maybank) argues the circuit court erred by (1) referring the underlying matter to the master-in-equity, (2) granting Respondents' motions for summary judgment, and (3) denying Maybank's motion to amend its complaint.  Maybank also argues that the circuit court did not have subject matter jurisdiction over the motions for summary judgment because Maybank had appealed the order referring the matter to the master and that appeal was pending.  We reverse the order of reference and the order granting summary judgment and denying the motion to amend.  We remand for further proceedings.

### FACTUAL/PROCEDURAL HISTORY

The underlying action centers around two lots along Maybank Highway and a purported easement.  The servient estate is a lot that comprised sixty acres (Property)[1] and was initially purchased by Penny Creek Associates—a company equally owned by Michel LaPlante (Michel) and Respondent the Eugene J. Zurlo Living Trust Dated December 11, 1997 (Zurlo Trust).[2]  The dominant estate is the lot adjacent to Property.  According to Maybank, the adjacent lot has on it a building

---

[1] Penny Creek hired Respondent Seamon, Whiteside & Associates (Seamon) to prepare planned unit development guidelines for Property.
[2] Eugene Zurlo is named in this action as an individual and as a co-trustee for Zurlo Trust.  For clarity, we refer to Zurlo and Zurlo Trust collectively as Zurlo Trust.

with office spaces for lease, and, during all relevant times, the office spaces had been leased.

The dominant estate has been owned, at all relevant times, by Maybank—a limited liability company (LLC). Initially, Penny Creek owned all of Maybank's membership interests. In 2013, Penny Creek transferred all of its membership interests to the LaPlante Family.[3] Shortly after Penny Creek transferred its membership interests, Zurlo Trust and others commenced a derivative and judicial dissolution action against Penny Creek. The matter was settled in 2016 with an agreement for Penny Creek to wind up its business, sell its real estate, and terminate its LLC status. The LaPlante Family currently retains all membership interests in Maybank. In its complaint, Maybank alleged that as part of the transfer of membership interests, Penny Creek granted the LaPlante Family a thirty-foot right-of-way easement over Property, and that the LaPlante Family assigned the easement to Maybank. Importantly, Zurlo Trust and Michel each owned fifty-percent of Penny Creek at the time of the transfer.

In 2017, Property was sold as part of a foreclosure action Wells Fargo brought against Penny Creek. The master issued a judgment of foreclosure (Foreclosure Order) that provided the "sale [of Property] shall be subject to taxes, assessments, existing easements, and easements and restrictions of record." The Foreclosure Order also provided, "[T]he defendants named herein and all persons whosoever claiming under the defendants [shall] be forever barred and foreclosed of all right, title, interest[,] and equity of redemption in . . . Property, or any part thereof." Finally, the Foreclosure Order provided the master would retain jurisdiction for "all necessary acts incident to this foreclosure and to hear any post-judgment matters, including, but not limited to, the issuance of a Writ of Assistance."

Respondent 1776, LLC—an entity Maybank alleges is owned entirely by Zurlo Trust—purchased Property at the foreclosure sale and subsequently sold the portion of Property on which the purported easement sits to Respondent Beach Fenwick, LLC. Beach Fenwick is an affiliate or subsidiary of co-Respondent The Beach Company (collectively, Beach Entities).[4]

---

[3] Michel, John H. LaPlante, Peter F. LaPlante, and Marianne LaPlante-Scarlata composed the LaPlante Family. John served as Maybank's manager from 2013 to 2019. Michel was a minority shareholder in Maybank until 2019 when he took over as manager following John's death.

[4] Seamon continued developing the planned unit guidelines with 1776 and Beach Entities.

In January 2020, Maybank commenced the underlying action against Respondents in which Maybank (1) sought declaratory judgment that it has a thirty-foot, private right-of-way easement across Property or, in the alternative, that the private right-of-way is a restrictive covenant; (2) alleged civil conspiracy; and (3) requested a temporary injunction to stop development on the easement.

All Respondents—except for Seamon—filed motions for reference to the master on the ground that the Foreclosure Order required the master to retain jurisdiction over "all necessary acts incident to this foreclosure and to hear any post-judgment matters." Seamon filed a motion to dismiss. Maybank opposed the motions for reference on the ground that it had requested a trial by jury on all triable issues and the issues raised in its complaint were actions at law that entitled Maybank to a right to trial by jury. Maybank asserted that it was not a named party nor was it served process in the foreclosure action and, therefore, its rights and interests in Property were never extinguished or otherwise impacted by the Foreclosure Order. Following a hearing, the circuit court issued an order referring the entire case and all pending motions to the master (Reference Order). Maybank filed a Rule 59(e), SCRCP, motion that the circuit court denied. Maybank filed a notice of appeal from the Reference Order to the court of appeals on July 15, 2020 (the First Appeal). Maybank asserted the Reference Order was immediately appealable because it affected the mode of trial, a substantial right. *See Creed v. Stokes*, 285 S.C. 542, 542–43, 331 S.E.2d 351, 352 (1985) (holding an order referring the matter to the master was immediately appealable when the petitioner challenged the order on the ground that it violated his right to a trial by jury).

While the First Appeal was pending, Respondents requested a status conference before the master. Maybank filed a formal objection to the status conference on the ground that the First Appeal was pending. The master held the status conference during which Maybank stated the status conference should not have been occurring and noted it had filed an objection to the conference on the ground that there was a pending appeal. The master issued a Form 4 order returning the matter to the circuit court for disposition (the Return Order). The master concluded the Return Order mooted the First Appeal. None of the parties specifically appealed this order. Following the Return Order, Respondents filed motions for summary judgment, and Maybank filed a written motion to amend the complaint with the circuit court.[5]

---

[5] Seamon filed a supplement to its motion to dismiss or, in the alternative, a motion for summary judgment.

On September 15, 2020, after the motions for summary judgment and to amend were filed, Respondents filed with the court of appeals a motion to dismiss the First Appeal. Respondents argued the Return Order rendered the appeal moot because an intervening act—the Return Order—granted the relief Maybank was seeking on appeal. Maybank filed a return to the motion to dismiss, arguing the master lacked jurisdiction over the action when it issued the Return Order.

The circuit court held a hearing on the motions for summary judgment. Maybank filed a Rule 59(e) motion that the circuit court denied. This appeal followed. After the second notice of appeal was filed, this court issued an order denying Respondents' motion to dismiss the First Appeal.

## ISSUES ON APPEAL

**I.** Did the circuit court err in referring the matter to the master?

**II.** Did the circuit court have jurisdiction over Respondents' motions for summary judgment that were heard subsequent to Maybank's filing a notice of appeal from the order of reference?

**III.** Did the circuit court err in denying Maybank's motion to amend its complaint?

**IV.** In the alternative, if the circuit court properly retained jurisdiction to hear and issue an order on the motions for summary judgment, did the circuit court err in granting Respondents' motions for summary judgment?

## STANDARDS OF REVIEW

*A. Reference Order*

Rule 53(b), SCRCP, provides:

> In an action where the parties consent, in a default case, or an action for foreclosure, some or all of the causes of action in a case may be referred to a master or special referee by order of a circuit judge or the clerk of court. . . . Any party may request a jury pursuant to Rule 38 on any or all issues triable of right by a jury and, upon

the filing of a jury demand, the matter shall be returned to
the circuit court.

### B. Retained Jurisdiction

Our courts apply the abuse of discretion standard of review to determine whether a trial court erred in retaining jurisdiction over matters during the pendency of an appeal. *Cousar v. New London Eng'g Co.*, 306 S.C. 37, 40, 410 S.E.2d 243, 245 (1991).

### C. Summary Judgment

This court reviews the grant of a summary judgment motion under the same standard applied by the circuit court pursuant to Rule 56(c), SCRCP. *Jackson v. Bermuda Sands, Inc.*, 383 S.C. 11, 14 n.2, 677 S.E.2d 612, 614 n.2 (Ct. App. 2009). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. The court must view all ambiguities and reasonable inferences from the evidence in the "light most favorable to the non-moving party." *Osborne v. Adams*, 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001). "When a circuit court grants summary judgment on a question of law, [appellate courts] will review the ruling de novo." *Wright v. PRG Real Est. Mgmt., Inc.*, 426 S.C. 202, 212, 826 S.E.2d 285, 290 (2019).

### D. Motion to Amend

"A motion to amend is within the sound discretion of the trial judge . . . ." *Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry*, 403 S.C. 623, 632, 743 S.E.2d 808, 812 (2013).

## LAW/ANALYSIS

## I.  Reference Order

### A. Right to a Trial by Jury

Maybank argues that the Reference Order was infirm at its inception because Maybank demanded in its verified complaint and was entitled to a jury trial.

Maybank also asserts the Return Order was void because the master lacked jurisdiction.[6]  We agree.

"The right of trial by jury as declared by the Constitution or as given by a statute of South Carolina shall be preserved to the parties inviolate."  Rule 38(a), SCRCP.  "Generally, the relevant question in determining the right to trial by jury is whether an action is legal or equitable; there is no right to trial by jury for equitable actions." *Bateman v. Rouse*, 358 S.C. 667, 673, 596 S.E.2d 386, 389 (Ct. App. 2004) (quoting *Lester v. Dawson*, 327 S.C. 263, 267, 491 S.E.2d 240, 242 (1997)). "Whether an action is legal or equitable is primarily determined by the allegations in the complaint."  *Bateman*, 358 S.C. at 673, 596 S.E.2d at 389. "Declaratory judgment actions are neither legal nor equitable; therefore, the standard of review depends upon the nature of the underlying issues." *S.C. Dep't of Transp. v. Horry County*, 391 S.C. 76, 81, 705 S.E.2d 21, 24 (2011).

Rule 53(c), SCRCP, provides that once a circuit court has referred a matter to a master, the master "shall exercise all power and authority [that] a circuit judge sitting *without a jury* would have in a similar matter."  (emphasis added).

We hold the circuit court erred by issuing the Reference Order referring the matter to the master because Maybank had a right to a jury trial and sought to exercise that right.  *See* Rule 38(a), SCRCP ("The right of trial by jury as declared by the Constitution or as given by a statute of South Carolina shall be preserved to the parties inviolate."); *cf. Collier v. Green*, 244 S.C. 367, 370, 137 S.E.2d 277, 279 (1964) ("Once it has been determined that the complaint states a cause of action [that] is equitable as distinguished from one cognizable only at law, it necessarily follows that a compulsory order of reference was not improper.").  In its complaint, Maybank sought a declaratory judgment on the existence of an easement or, in the alternative, a restrictive covenant, and alleged civil conspiracy, seeking punitive damages.  Maybank had a right to a jury trial on all three causes of action and explicitly invoked that right in its complaint. *See Murrells Inlet Corp. v. Ward*, 378 S.C. 225, 231, 662 S.E.2d 452, 454 (Ct. App. 2008) ("The determination of the existence of an easement is a question of fact in a law action . . . ."); *Seabrook Island Prop. Owners Ass'n v. Marshland Trust, Inc.*, 358 S.C. 655, 661, 596 S.E.2d 380, 383 (Ct. App. 2004) (noting that restrictive covenants are voluntary contracts);

---

[6] Maybank asserts this court has already found the master was without jurisdiction to enter the Return Order in its denial of the motion to dismiss the First Appeal.  We disagree.  The order denying the motion to dismiss contained no findings or holdings related to the master's jurisdiction or the validity of the Return Order.

*McGill v. Moore*, 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009) ("An action to construe a contract is an action at law."); *Mason v. Mason*, 412 S.C. 28, 61, 770 S.E.2d 405, 422 (Ct. App. 2015) (holding a civil conspiracy action is generally an action at law).

The Foreclosure Order did not eliminate Maybank's right to a trial by jury because the master did not have personal jurisdiction over Maybank to bind it to the judgment. *See Sheffield v. Grieg*, 105 S.C. 219, 226, 89 S.E. 664, 666 (1916) (holding a judgment of foreclosure was not binding on the respondents because they were not parties to the foreclosure action); *BB&T v. Taylor*, 369 S.C. 548, 551, 633 S.E.2d 501, 503 (2006) ("A judgment is void if a court acts without personal jurisdiction."); *Ex Parte S.C. Dep't of Revenue*, 350 S.C. 404, 407, 566 S.E.2d 196, 198 (Ct. App. 2002) (stating a court should not render judgment affecting the right of a party without proper notice to the party). Personal jurisdiction is generally conferred by the service of process. *BB&T*, 369 S.C. at 551, 633 S.E.2d at 503. Though Michel was a party to the foreclosure action prior to his severance from the action—and his actual knowledge of the action may have implications in separate and subsequent actions—Michel's receipt of notice did not confer on the master personal jurisdiction over Maybank and could not bind Maybank to the Foreclosure Order. Michel participated in the foreclosure action in his individual capacity, not in relation to his then-status as a minority shareholder of Maybank, and Maybank was not named at all in the foreclosure action. *See id.* (holding a court cannot act against a party without personal jurisdiction); *see also id.* ("A court generally obtains personal jurisdiction by the service of a summons."); Rule 4(d)(3), SCRCP (explaining service is made "[u]pon a corporation or upon a partnership or other unincorporated association [that] is subject to suit under a common name, by delivering a copy of the summons and complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant").

*B. Mootness and Waiver*

Respondents argue this issue was moot because the master returned the case to the circuit court. Respondents also assert that Maybank's participation in the hearing on the merits of the summary judgment motions waived its argument that the circuit court erred in issuing the Reference Order. We disagree.

With regard to mootness, the Return Order was void at its inception because the master did not have jurisdiction over the case. *See Bunkum v. Manor Props.*,

321 S.C. 95, 98, 467 S.E.2d 758, 760 (Ct. App. 1996) (per curiam) ("A master has no power or authority except that which is given to him by the order of reference."); *see also Universal Benefits, Inc. v. McKinney*, 349 S.C. 179, 183, 561 S.E.2d 659, 661 (Ct. App. 2002) ("The definition of void under the rule only encompasses judgments from courts which failed to provide proper due process, or judgments from courts [that] lacked subject matter jurisdiction or personal jurisdiction." (quoting *McDaniel v. U.S. Fid. & Guar. Co.*, 324 S.C. 639, 644, 478 S.E.2d 868, 871 (Ct. App. 1996))); *id.* ("A judgment is not rendered void by irregularities [that] do not involve jurisdiction."); *Katzburg v. Katzburg*, 410 S.C. 184, 187, 764 S.E.2d 3, 5 (Ct. App. 2014) ("A void judgment is one that, from its inception, is a complete nullity and is without legal effect." (quoting *Gainey v. Gainey*, 382 S.C. 414, 424, 675 S.E.2d 792, 797 (Ct. App. 2009) (per curiam))). The First Appeal automatically stayed the relief ordered in the Reference Order pursuant to Rule 241(a), SCACR. Rule 241(a), SCACR ("As a general rule, the service of a notice of appeal in a civil matter acts to *automatically stay matters decided in the order*, judgment, decree or decision on appeal, and to *automatically stay the relief ordered* in the appealed order, judgment, or decree or decision." (emphases added)). Neither of the parties argued the Reference Order is subject to any of the exceptions under Rule 241(b), SCACR, nor did any party seek to lift the automatic stay.

Because the Reference Order was stayed by virtue of the First Appeal, the matter was not properly referred to the master and the circuit court retained jurisdiction over any matter not affected by the appeal during the pendency of the First Appeal. *See* Rule 205, SCACR ("Upon the service of the notice of appeal, the appellate court shall have exclusive jurisdiction over the appeal; the lower court or administrative tribunal shall have jurisdiction to entertain petitions for writs of supersedeas as provided by Rule 241. Nothing in these Rules shall prohibit the lower court, commission or tribunal from proceeding with matters *not affected by the appeal*." (emphasis added)).

With regard to waiver, Maybank did not waive its argument in the First Appeal that reference to the master was improper because Maybank continued to raise concerns about the jurisdiction of the circuit court and the master in motions and at hearings. Further, Maybank timely appealed the Reference Order. We acknowledge Maybank failed to raise the issue of the circuit court's jurisdiction during the pendency of the First Appeal in its Rule 59(e) motion. However, the issue was raised to the circuit court and the circuit court ruled on the issue. Thus, it is preserved. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 77, 497 S.E.2d 731, 734 (1998) ("Post-trial motions are not necessary to preserve issues that have been ruled upon at trial; they are used to preserve those that have been raised to the trial court but not

yet ruled upon by it."); *Herron v. Century BMW*, 395 S.C. 461, 465, 719 S.E.2d 640, 642 (2011) ("Issue preservation rules are designed to give the trial court a fair opportunity to rule on the issues, and thus provide [appellate courts] with a platform for meaningful appellate review." (quoting *Queen's Grant II Horizontal Prop. Regime v. Greenwood Dev. Corp.*, 368 S.C. 342, 373, 628 S.E.2d 902, 919 (Ct. App. 2006))).

## II.    Retained Jurisdiction

Maybank argues the circuit court erred in proceeding with and issuing an order on Respondents' motions for summary judgment because the issue sought to be litigated was affected by the matter on appeal to this court.[7]  We disagree.

---

[7] Maybank characterizes its challenge as whether the circuit court had subject matter jurisdiction to issue an order on the motions for summary judgment.  Subject matter jurisdiction is the "power [of a court] to hear and determine cases of the general class to which the proceedings in question belong" as opposed to the type of jurisdiction at issue here—the power of the circuit court to render a particular judgment requested.  *See In re Nov. 4, 2008 Bluffton Town Council Election*, 385 S.C. 632, 637, 686 S.E.2d 683, 685 (2009) (alteration in original) (quoting *Dove v. Gold Kist, Inc.*, 314 S.C. 235, 237–38, 442 S.E.2d 598, 600 (1994)); *see also Limehouse v. Hulsey*, 404 S.C. 93, 104, 744 S.E.2d 566, 572 (2013) ("The word 'jurisdiction' does not in every context connote subject matter jurisdiction . . . ."); *id.* ("[J]urisdiction is composed of three elements: (1) personal jurisdiction; (2) subject matter jurisdiction; and (3) the court's power to render the particular judgment requested." (quoting *Indep. Sch. Dist. No. 1 of Okla. Cnty. v. Scott*, 15 P.3d 1244, 1248 (Okla. Civ. App. 2000)).  However,

> [t]he reference in Rules 205 and 241(a) to the "jurisdiction" of the lower courts does not refer to subject matter jurisdiction.  Rather, the rules govern the circumstances under which the exclusive appellate jurisdiction Rule 205 grants to the appellate court deprives the lower court of the power to address a particular issue, or "matter," during the pendency of the appeal.

*Tillman v. Oakes*, 398 S.C. 245, 255 n.3, 728 S.E.2d 45, 51 n.3 (Ct. App. 2012). While Maybank may have mischaracterized the type of jurisdiction implicated, this does not impact the substance of its argument on appeal, which is that the circuit court did not have the jurisdiction to issue the order. *See Standard Fed. Sav. & Loan*

The notice of appeal divests the circuit court of jurisdiction over the matter on appeal, but the circuit court retains the power to proceed with matters not affected by the appeal. *See* Rule 205, SCACR ("Upon the service of the notice of appeal, the appellate court shall have *exclusive jurisdiction* over the appeal . . . . Nothing in these Rules shall prohibit the lower court, commission[,] or tribunal from proceeding with matters not affected by the appeal."); *Tillman v. Oakes*, 398 S.C. 245, 255, 728 S.E.2d 45, 51 (Ct. App. 2012) ("Under Rule 205, the lower court is deprived of the power to proceed with matters that are affected by the appeal, but is specifically allowed to proceed with matters not affected by the appeal."). The circuit court's "power to proceed is determined by whether the issue sought to be litigated in the lower court during the appeal is a 'matter[ ] affected by the appeal' under Rules 205 and 241(a)[, SCACR]." *Tillman*, 398 S.C. at 255, 728 S.E.2d at 51 (first alteration in original). Rule 241(a) of the South Carolina Appellate Court Rules provides, "As a general rule, the service of a notice of appeal in a civil matter acts to *automatically stay matters decided in the order*, judgment, decree or decision on appeal, and to automatically stay the relief ordered in the appealed order, judgment, or decree or decision." (emphasis added).

We hold the circuit court did not err in considering the merits of the motions for summary judgment because the motions involved matters that were not affected by the appeal. *See Tillman*, 398 S.C. at 255, 728 S.E.2d at 51 (noting the family court's "power to proceed is determined by whether the issue sought to be litigated in the lower court during the appeal is a 'matter[ ] affected by the appeal' under Rules 205 and 241(a)[, SCACR]" (first alteration in original)). The matter pending on appeal involved a review of whether the Reference Order deprived Maybank of its right to a trial by jury—in other words, whether the factfinder must be a jury. The issue sought to be litigated was whether Respondents were entitled to judgment as a matter of law. Summary judgment is neutral as to whether there is a bench trial or a jury trial. Rather, granting summary judgment is a procedural mechanism by which the court determines there is not a genuine issue of material fact and, thus, the services of a factfinder are not needed because the moving party is entitled to judgment *as a matter of law*. *See George v. Fabri*, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001) ("The purpose of summary judgment is to expedite disposition of cases [that] do not require the services of a fact finder."); *id.* ("In that way, '[a] motion for summary judgment is akin to a motion for a directed verdict' because '[i]n each

*Ass'n v. Mungo*, 306 S.C. 22, 26, 410 S.E.2d 18, 20 (Ct. App. 1991) (stating that it is the substance of the relief sought that matters "regardless of the form in which the request for relief was framed").

instance, one party must lose as a matter of law.'" (alterations in original) (quoting *Main v. Corley*, 281 S.C. 525, 526, 316 S.E.2d 406, 407 (1984))). Accordingly, whether Respondents are entitled to judgment as a matter of law is not affected by the appeal because the outcome of the First Appeal would have no impact on whether summary judgment is proper.

## III.    Summary Judgment

At the heart of Maybank's complaint is the alleged creation of an easement on Property. On October 4, 2013, Penny Creek, as Maybank's then-sole member, owned and controlled all of the membership interests in Maybank. On that day, Zurlo Trust and Michel executed the Resolution of the Sole Shareholder of Penny Creek Associates, LLC (the Resolution) that memorialized Penny Creek's members' approval of the "sale, assignment, transfer[,] and conveyance" of Penny Creek's membership interests in Maybank to the LaPlante Family.

The Resolution contained two sections that reference an easement. First, a recital (the Recital) stated,

> WHEREAS, as a condition of closing, [Penny Creek] has agreed to grant, transfer, sell[,] and convey to [the LaPlante Family and] their successors and assigns, an access easement for pedestrian and vehicular ingress, egress[,] and access to, from[,] and over that portion of the lands of [Penny Creek] known as [Property] ("30' Private R/W"), the location and condition of which shall be mutually agreed upon at the completion of that certain roadway known as Pitch Fork Road ("Pitch Fork Road"). Upon the completion of Pitch Fork Road, the Parties hereto shall execute and record an Easement Agreement to memorialize the 30' Private R/W.

Then, a subsequent provision (the Provision) stated,

> BE IT FURTHER RESOLVED, that upon the completion of Pitch Fork Road, [Penny Creek] shall grant to [the LaPlante Family and] their successors and assigns, an access easement for pedestrian and vehicular ingress, egress[,] and access to, from[,] and over that portion of the lands of [Penny Creek] known as [Property] ("30' Private

R/W"), the location and condition of which shall be mutually agreed upon at a future date.

Within the same week the Resolution was executed, Penny Creek and the LaPlante Family entered into two other written agreements related to the membership transfer—the Assignment of Membership Interest and Written Consent in Lieu of a Special Meeting of the Sole Member of Maybank 2754, LLC (Assignment) and the Contract for Assignment of Interest (Assignment Contract). The Assignment included the Provision that had the same language as the Recital in the Resolution. The Assignment Contract included the Provision that mirrored the language of the Recital but did not include the clause "as a condition of closing."

Following the execution of the Resolution, Assignment, and Assignment Contract, Zurlo Trust no longer had any membership interests in Maybank, and Michel's interest in Maybank was that of a minority shareholder. The LaPlante Family—as the owners of all membership interests in Maybank—assigned rights to the thirty-foot easement to Maybank. The Resolution was never recorded, and Pitch Fork Road has yet to be completed. In its complaint, Maybank asserted that the Resolution created an easement or, in the alternative, the restrictive covenant, and that Respondents had actual knowledge of the easement.

Respondents filed motions for summary judgment, asserting the easement did not exist and if it had, it was extinguished in the foreclosure action. Maybank filed a motion to amend the complaint. The circuit court heard the motions for summary judgment and to dismiss based on the original complaint because "it makes perfect sense[] to hear the [m]otions [for summary judgment and to dismiss] in the order they were filed, and if the [c]ourt decides these should be denied, the [c]ourt may allow the [a]mendment to the original [c]omplaint and refiling" of the motions for summary judgment and to dismiss. The circuit court also found it had jurisdiction to hear and rule on the motions for summary judgment because the matters to be considered were matters not affected by the pending First Appeal.

On the merits, the circuit court concluded there was not a "legal right to an easement" as a matter of law. The court found the Resolution did not meet the essential elements required to create a property right because it lacked any identifiable location or condition, duration, or scope. According to the circuit court, the Resolution at best created an "agreement to agree[,]" which does not constitute a contract under South Carolina law and "cannot detrimentally impact future purchases of the property." The circuit court determined even if the Resolution

created an easement, it created an easement in gross, which is not transferable to Maybank.

The court also determined that even if the Resolution created some form of an appurtenant easement, the Resolution was never recorded, preventing a finding of actual or constructive notice of the easement. The court further found if an appurtenant easement did exist, it did not survive the foreclosure action because the later-in-time unrecorded easement was never subordinated to the first-in-time mortgage and, thus, was foreclosed on by the Foreclosure Order.[8]

Finally, the circuit court concluded several estoppel doctrines barred Maybank's action. The court took judicial notice of a legal malpractice action Maybank had separately brought against the law firm it hired to effectuate the Resolution and found judicial estoppel barred Maybank from taking a position in this action contrary to its position in that litigation. The court found Michel, as the manager and a controlling member of Penny Creek and now manager of Maybank, was barred by collateral estoppel and estoppel by silence from having Maybank raise the issue of an easement because he did not raise the easement's existence in the dissolution or foreclosure actions. Finally, the court found the Foreclosure Order is the law of the case because it involved the same parties and the same property as the underlying action.

We review the appropriateness of summary judgment in three sections: (1) the effect of the Foreclosure Order, (2) the creation and character of the easement, and (3) the applicability of estoppel doctrines.

### A. Effect of the Foreclosure Order

Maybank argues the circuit court erred in finding the easement was extinguished by the Foreclosure Order because it was not a party to the action and Michel was severed from the foreclosure action. Maybank asserts that even if the Foreclosure Order could impact Maybank's rights, the order explicitly sets out that the sale of Property was subject to existing easements and easements of record. Finally, Maybank argues the circuit court erred in finding the Foreclosure Order was the law of the case. We agree.

---

[8] The circuit court noted Maybank "judicially admitted that its alleged easement was extinguished in [the foreclosure action]." However, the circuit court did not clarify when Maybank "judicially admitted" this fact, and we are unable to locate in the record when the admission occurred.

"A court may not act against a party without personal jurisdiction. Moreover, a court should not render a judgment affecting the rights of a party without proper notice." *Green Tree Serv., LLC v. Adams*, 375 S.C. 583, 586, 654 S.E.2d 100, 102 (Ct. App. 2007) (citation omitted).

As discussed above, Maybank cannot be bound to the Foreclosure Order because the master did not have personal jurisdiction over Maybank and had not provided Maybank with proper notice. However, even if Maybank were bound by the Foreclosure Order, the order did not extinguish the easement because the Foreclosure Order explicitly stated the sale of Property was subject to "existing easements, and easements and restrictions of record." The master clearly contemplated some easements existed and were not recorded, and those existing easements would survive the sale of Property. This comports with our state's precedent that express easements do not have to be recorded to be valid. *Frierson v. Watson*, 371 S.C. 60, 68, 636 S.E.2d 872, 876 (Ct. App. 2006) ("An easement by grant is not required to be recorded to be valid."). Maybank sought declaratory judgment on the ground that Respondents had *actual notice* of an express easement that was created prior to the Foreclosure Order. An existing express easement created under the facts alleged here could not be extinguished because the subsequent purchaser allegedly had actual notice. *See* Jon W. Bruce, James W. Ely, Jr. & Edward T. Brading, Mortgage Foreclosure Sale of Servient Estate, *The Law of Easements & Licenses in Land* § 10:41 ("Even if a subsequent easement holder is not joined as a party defendant in a judicial foreclosure, a bona fide purchaser at the foreclosure sale *without notice* of the easement may take the servient estate free of the servitude." (emphasis added)).

Turning to whether the Foreclosure Order is the law of the case, "Under the law-of-the-case doctrine, a party is precluded from relitigating, after an appeal, matters that were either not raised on appeal, but should have been, or raised on appeal, but expressly rejected by the appellate court." *Flexon v. PHC-Jasper, Inc.*, 413 S.C. 561, 571, 776 S.E.2d 397, 403 (Ct. App. 2015) (quoting *Judy v. Martin*, 381 S.C. 455, 458, 674 S.E.2d 151, 153 (2009)). "Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of *a single continuing lawsuit*. These rules do not involve preclusion by final judgment; instead, they regulate judicial affairs before final judgment." *Id.* at 573, 776 S.E.2d at 404 (emphasis added) (quoting *In re Grossinger's Assocs.*, 184 B.R. 429, 434 (Bankr. S.D.N.Y. 1995)).

The Foreclosure Order is not the law of the case because it is the order in the foreclosure action that was distinct from, and not a continuation of, the underlying action. *See Flexon*, 413 S.C. at 573, 776 S.E.2d at 404 ("Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of *a single continuing lawsuit*." (emphasis added) (quoting *In re Grossinger's Assocs.*, 184 B.R. at 434)).

### B. Creation of the Easement

Maybank argues the circuit court erred in finding the Resolution did not create an easement and, at best, created an agreement to agree. Maybank contends the Resolution's language clearly expressed the parties' intention to create the easement. We agree.

"An easement is a right to use the land of another for a specific purpose." *Snow v. Smith*, 416 S.C. 72, 84, 784 S.E.2d 242, 248 (Ct. App. 2016). "An easement may be established by express grant or by express reservation in a deed or other instrument." 12 S.C. Jur. *Easements* § 6 (2024) (citing *Sandy Island Corp. v. Ragsdale*, 246 S.C. 414, 419, 143 S.E.2d 803, 806 (1965)); *see also Windham v. Riddle*, 381 S.C. 192, 201, 672 S.E.2d 578, 582 (2009) ("An easement may be created by reservation in a deed.").

"A grant of an easement is to be construed in accordance with the rules applied to deeds and other written instruments." *Binkley v. Rabon Creek Watershed Conservation Dist. of Fountain Inn*, 348 S.C. 58, 71, 558 S.E.2d 902, 909 (Ct. App. 2001) (quoting 28A C.J.S. *Easements* § 57 at 235 (1996)). "As a general rule, to constitute a grant of an easement, any words clearly showing the intention to grant an easement are sufficient." *Ten Woodruff Oaks, LLC v. Point Dev., LLC*, 385 S.C. 174, 180, 683 S.E.2d 510, 513 (Ct. App. 2009) (quoting 25 Am. Jur. 2d *Easements and Licenses* § 15 at 512 (2004)). "Whether a grant in a written instrument creates an easement and the type of easement created are to be determined by ascertaining the intention of the parties as gathered from the language of the instrument; the grant should be construed so as to carry out that intention." *Id.* at 181, 683 S.E.2d at 513 (quoting *Smith v. Comm'rs of Pub. Works of City of Charleston*, 312 S.C. 460, 466, 441 S.E.2d 331, 335 (Ct. App. 1994)).

"If the language is uncertain or ambiguous in any respect, all the surrounding circumstances, including the construction [that] the parties have placed on the language, may be considered by the court, to the end that the intention of the parties may be ascertained and given effect." *Id.* at 181, 683 S.E.2d at 513 (quoting 25 Am.

Jur. 2d *Easements* § 18 at 516 (2004)). "Whether the language of a contract is ambiguous is a question of law to be determined by the court from the terms of the contract as a whole." *State Accident Fund v. S.C. Second Inj. Fund*, 388 S.C. 67, 75, 693 S.E.2d 441, 445 (Ct. App. 2010) (per curiam). "If a court determines the language is ambiguous, the question of the parties' intent becomes a question of fact, and the court may admit evidence to show the intent of the parties." *Vista Del Mar Condo. Ass'n v. Vista Del Mar Condos., LLC*, 441 S.C. 223, 233, 892 S.E.2d 532, 538 (Ct. App. 2023).

The evidence in the record does not support the finding that there was no genuine issue of material fact as to the creation of the easement. Viewing the evidence in the light most favorable to the nonmoving party, the language of the Resolution could be read to evince an intention to create an express easement. *Ten Woodruff Oaks*, 385 S.C. at 180, 683 S.E.2d at 513 ("As a general rule, to constitute a grant of an easement, any words clearly showing the intention to grant an easement are sufficient." (quoting 25 Am. Jur. 2d *Easements and Licenses* § 15 at 512 (2004))). The Recital of the Resolution provides that "*as a condition of closing*, [Penny Creek] *has agreed* to grant, transfer, sell[,] and convey to [the LaPlante Family], their successors and assigns, an access easement." (emphases added). The relevant section also provides once Pitch Fork Road is complete, the parties will "memorialize" the thirty-foot right-of-way in an easement agreement. The Recital's language reflects that Penny Creek granted the easement as a condition of closing and that the parties were to record a memorialization of the easement once a future event occurred.

We acknowledge the Provision's language is different from the Recital's, providing that "*upon the completion of Pitch Fork Road*, [Penny Creek] *shall grant* to [the LaPlante Family], their successors and assigns, an access easement . . . the location and condition of which shall be mutually agreed upon at a future date." (emphases added). However, read with the Recital, it is clear the parties intended the Provision to be an express grant of an easement. *See State Accident Fund*, 388 S.C. at 75, 693 S.E.2d at 445 ("Whether the language of a contract is ambiguous is a question of law to be determined by the court from the terms of the contract as a whole. In making this determination, the court must examine the entire contract and not merely whether certain phrases taken in isolation could be interpreted in more than one way." (citation omitted)).[9] At a minimum, the difference in language

---

[9] We note Maybank also argued the circuit court erred in concluding the Resolution could not create an easement because it did not include the "essential elements" necessary to create a property right, specifically duration, scope, nature, and

between the Recital and the Provision means the language is ambiguous and the question of the parties' intent is one of fact. *Vista Del Mar*, 441 S.C. at 233, 892 S.E.2d at 538 ("If a court determines the language is ambiguous, the question of the parties' intent becomes a question of fact, and the court may admit evidence to show the intent of the parties.").

Lastly, we hold the circuit court erred in finding the failure to record the Resolution prevented actual notice of the easement because a buyer with actual notice will be bound by the easement regardless of whether it is recorded. *See Frierson*, 371 S.C. at 68, 636 S.E.2d at 876 ("An easement by grant is not required to be recorded to be valid."). The parties were not required to record the Resolution for the easement to be valid. Maybank only asserted Respondents had *actual* notice of the easement and admitted there was no constructive notice because the easement was not recorded.

### C. Character of the Easement

Maybank argues the circuit court erred in finding that if an easement was created, it was an easement in gross and could not be transferred. Maybank asserts parol evidence could be properly considered to determine the character of the easement reserved and parol evidence present here indicates the parties intended to create an appurtenant easement. We agree.

The character of an express easement—appurtenant, in gross, or in gross commercial—will determine its alienability and is determined by "the nature of the right and the intention of the parties creating it." *Tupper v. Dorchester County*, 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997). "The distinction between an appurtenant easement and an easement in gross involves the extent of a grant of an easement, as

---

location. We agree with Maybank. We are uncertain as to what legal basis the circuit court was relying on in reaching its conclusion. We have not found an example of our courts holding that the creation of an easement requires all of these elements. To the contrary, our court has upheld express easements that did not include those elements. *See Smith*, 312 S.C. at 468, 441 S.E.2d at 336 (stating the court must interpret an "unlocated easement . . . in light of good faith, reasonableness and what was necessarily the intent of the parties"); *see also Douglas v. Med. Invs., Inc.*, 256 S.C. 440, 447, 182 S.E.2d 720, 723 (1971) ("While it is true . . . that the instrument creating the easement does not show on its face . . . that the easement was in gross for commercial purposes, the evidence conclusively shows such fact.").

opposed to the creation of an easement." *Proctor v. Steedley*, 398 S.C. 561, 571, 730 S.E.2d 357, 362 (Ct. App. 2012). "[A]n easement in gross is a mere personal privilege to use the land of another; the privilege is incapable of transfer." *Tupper*, 326 S.C. at 325, 487 S.E.2d at 191. "[A]n appurtenant easement inheres in the land, concerns the premises, has one terminus on the land of the party claiming it, and is essentially necessary to the enjoyment thereof." *Id.* An appurtenant easement passes with the dominant estate on conveyance. *Id.* "Unless an easement has all the elements necessary to be an appurtenant easement, it will be characterized as a mere easement in gross." *Id.* at 325, 487 S.E.2d at 191 (citing 12 S.C. Jur. *Easements* § 3(c)). "Where language in a plat reflecting an easement is capable of more than one construction, that construction which least restricts the property will be adopted." *Id.* at 326, 487 S.E.2d at 191.

Here, summary judgment was improper because the language of the Resolution is ambiguous as to the character of the easement. The Recital and the Provision stated Penny Creek granted to the LaPlante Family, and their successors and assigns, an access easement allowing ingress and egress for pedestrians and vehicles from the road onto Maybank's property. This language is clear as to the intention of the parties to have the easement inhere with the land and concern the land. However, the language of the Resolution leaves open the location and condition of the right of way, making it unclear whether "ingress and egress" were meant to include a terminus to be located on Maybank's property. The Resolution's language also does not make clear whether the parties intended the easement to be necessary for the enjoyment of the land. *See id.* at 325, 487 S.E.2d at 191 ("[A]n appurtenant easement inheres in the land, concerns the premises, has one terminus on the land of the party claiming it, and is essentially necessary to the enjoyment thereof."); *id.* at 325–26, 487 S.E.2d at 191 ("Unless an easement has all the elements necessary to be an appurtenant easement, it will be characterized as a mere easement in gross." (citing 12 S.C. Jur. *Easements* § 3(c))).

Because the language is ambiguous, the court may look to extrinsic evidence to ascertain the intention of the parties.[10] *Vista Del Mar*, 441 S.C. at 233, 892 S.E.2d at 538 ("If a court determines the language is ambiguous, the question of the parties' intent becomes a question of fact, and the court may admit evidence to show the intent of the parties."). The evidence before the circuit court reflected that Maybank and Penny Creek could have intended the easement to be appurtenant and that additional discovery was needed on this question. Michel provided an affidavit

---

[10] The only Respondents to assert the easement was in gross were Beach Entities, which were not parties to the Resolution.

stating the easement was necessary for the enjoyment of the property because the property currently only has one means of ingress and egress, which limits the development potential of the land and its use for commercial purposes due to the traffic congestion. While this court takes no position as to whether the easement was appurtenant or in gross, the evidence in the record does not support the finding that there was no genuine issue of material fact as to the character of the easement.

### *D. Collateral Estoppel and Estoppel by Silence*

Maybank argues its claims are not barred by collateral estoppel because (1) there was no personal jurisdiction over Maybank to bind it to the Foreclosure Order, (2) Michel was not the managing member of Maybank at the time of the foreclosure action, and (3) there is no evidence showing the issue of the existence of the easement was actually litigated, directly determined, or necessary to support the Foreclosure Order. Maybank also asserts that Michel owed no duty to speak about the easement in the dissolution or foreclosure actions and the circuit court failed to make any findings as to the source of such a duty. Further, Maybank maintains that even if Michel owed a duty to inform opposing parties in the dissolution or foreclosure actions about the easement, there was a genuine issue of material fact about whether anyone was led to believe an erroneous state of facts or relied on those facts to their detriment. We agree.

"The doctrine of collateral estoppel, or issue preclusion, serves to prevent a party from relitigating in a subsequent action an issue actually and necessarily litigated and determined in a prior action." *McClain v. Pactiv Corp.*, 360 S.C. 480, 485, 602 S.E.2d 87, 90 (Ct. App. 2004). "The party asserting collateral estoppel must demonstrate that the issue in the present lawsuit was: (1) actually litigated in the prior action; (2) directly determined in the prior action; and (3) necessary to support the prior judgment." *Carolina Renewal, Inc. v. S.C. Dep't of Transp.*, 385 S.C. 550, 554, 684 S.E.2d 779, 782 (Ct. App. 2009).

"[E]stoppel by silence arises when one party observes another dealing with his property in a manner inconsistent with his rights and makes no objection while the other party changes his position based on the party's silence." *Queen's Grant II*, 368 S.C. at 358, 628 S.E.2d at 911.

> A duty to speak or disclose may be found in three distinct scenarios:

(1) where it arises from a preexisting definite fiduciary relation between the parties;

(2) where one party expressly reposes a trust and confidence in the other with reference to the particular transaction in question, or else from the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence in the particular case is necessarily implied; and

(3) where the very contract or transaction itself, in its essential nature, is intrinsically fiduciary and necessarily calls for perfect good faith and full disclosure without regard to any particular intention of the parties.

*Hedgepath v. Am. Tel. & Tel. Co.*, 348 S.C. 340, 361, 559 S.E.2d 327, 339 (Ct. App. 2001)

We hold collateral estoppel and estoppel by silence do not bar Maybank's claims because the issues litigated in the foreclosure action concerned Penny Creek's defaults on loans held by Wells Fargo and the foreclosure of priority and junior liens. The Foreclosure Order expressly states the sale of Property was subject to existing easements and easements of record, and makes no findings of fact or conclusions related to any easement, indicating that easements were never litigated as part of the foreclosure action.  Further, the record does not contain any indication that in the foreclosure or dissolution actions, any party changed their position based on a belief that there was no easement.  The record does not reflect that in the foreclosure or dissolution action, any party used or sought to use Property in a manner inconsistent with Maybank's rights under the easement.

### E.  Judicial Estoppel

In May 2020, Maybank commenced a separate action against the law firm and the individual lawyer it hired to effectuate the transfer of Penny Creek's membership interests in Maybank to the LaPlante Family.  One of the documents the law firm was hired to draft was the Resolution.  Maybank alleged the law firm and lawyer breached their fiduciary duty and professional obligation, in part, by failing to record the Resolution or prepare and record a document that provided constructive notice of the easement.  The legal malpractice action was pending at the time the circuit court issued the order granting summary judgment.

Maybank argues the circuit court erred in finding judicial estoppel barred its claims because the issues and theories of recovery in the legal malpractice action are different than the issues and theories of recovery present in the underlying action. In the alternative, Maybank asserts if its position in the legal malpractice action were perceived as contradictory, the record does not support that (1) there was an intentional effort to mislead the court and (2) Maybank had successfully maintained the position and received some benefit. We agree.

Judicial estoppel is an equitable doctrine that "prevents a litigant from asserting a position inconsistent with, or in conflict with, one the litigant has previously asserted in the same or related proceeding." *Cothran v. Brown*, 357 S.C. 210, 215, 592 S.E.2d 629, 631 (2004). Judicial estoppel exists when the following elements are met:

> (1) two inconsistent positions taken by the same party or parties in privity with one another;
> (2) the positions must be taken in the same or related proceedings involving the same party or parties in privity with each other;
> (3) the party taking the position must have been successful in maintaining that position and have received some benefit;
> (4) the inconsistency must be part of an intentional effort to mislead the court; and
> (5) the two positions must be totally inconsistent.

*Id.* at 215–16, 592 S.E.2d at 632.

The underlying action was not barred by judicial estoppel because Maybank's positions in the legal malpractice action and here are consistent, and there is no evidence in the record that there was an intentional effort to mislead the court. In the underlying action, Maybank asserted Respondents had *actual* notice of the easement, not constructive notice. *See Frierson*, 371 S.C. at 68, 636 S.E.2d at 876 ("An easement by grant is not required to be recorded to be valid."). Maybank's claim in the legal malpractice action centers around the theory that the defendants' failure to draft and record the easement resulted in future buyers not receiving *constructive* notice of the easement.

*F. Laches*

Maybank argues the circuit court erred in determining the doctrine of laches applied and in failing to make any finding that Maybank unreasonably delayed the assertion of its right and that such a delay prejudiced Respondents. We agree.

"Laches is an equitable doctrine defined as 'neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done.'" *Strickland v. Strickland*, 375 S.C. 76, 83, 650 S.E.2d 465, 469 (2007) (quoting *Hallums v. Hallums*, 296 S.C. 195, 198, 371 S.E.2d 525, 527 (1988)). A defendant raising a laches defense "must show that the complaining party unreasonably delayed its assertion of a right, resulting in prejudice to the defendant." *Id.*

The finding of laches was in error because none of Respondents presented an argument for why laches applied in their motions for summary judgment or their answers. Respondents failed to meet their burden of showing unreasonable delay and prejudice. *See Strickland*, 375 S.C. at 83, 650 S.E.2d at 469 (holding a defendant must show that the complaining party unreasonably delayed asserting its right and the delay resulted in prejudice to the defendant).

For the foregoing reasons, we reverse the circuit court's grant of summary judgment and remand for further proceedings.[11]

## IV.  Motion to Amend Complaint

Maybank argues the circuit court erred in denying its motion to amend its complaint because the rules of civil procedure strongly favor granting motions to amend and the court should freely grant such a motion. Maybank notes it consistently requested to amend its complaint and the circuit court failed to respond before the order granting summary judgment. We agree.

Rule 15(a), SCRCP, "strongly favors amendments and the court is encouraged to freely grant leave to amend." *Patton v. Miller*, 420 S.C. 471, 489, 804 S.E.2d 252, 261–62 (2017) (quoting *Parker v. Spartanburg Sanitary Sewer Dist.*, 362 S.C. 276, 286, 607 S.E.2d 711, 717 (Ct. App. 2005)). "Under Rule 15(a), the circuit court

---

[11] Seamon argues the grant of its motion to dismiss must stand because Maybank failed to raise grounds to reverse and, thus, abandoned the issue. Maybank did not abandon any argument related to the motion to dismiss because the circuit court's order, which was appealed, granted the motions for summary judgment, including Seamon's, and effectively denied Seamon's motion to dismiss.

should have considered whether the defendants were prejudiced by the amendment, or whether there was some other substantial reason to deny it." *Id.* at 490, 804 S.E.2d at 262. The burden is on the party opposing the motion to amend to show prejudice. *Id.* at 491 n.9, 804 S.E.2d at 262 n.9.

> In the absence of any apparent or declared reason—such as undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Id.* at 490, 804 S.E.2d at 262 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"A court's decision to deny a motion to amend should not be based on the court's perception of the merits of an amended complaint." *Skydive Myrtle Beach, Inc. v. Horry County*, 426 S.C. 175, 182, 826 S.E.2d 585, 589 (2019). "In rare cases, however, a trial court may deny a motion to amend if the amendment would be clearly futile." *Id.*

The circuit court erred in denying the motion to amend because the order does not reflect a consideration of whether Respondents would be prejudiced by the amendment or whether there was some other *substantial* reason to deny the motion. *See Patton*, 420 S.C. at 490, 804 S.E.2d at 262 ("Under Rule 15(a), the circuit court should have considered whether the defendants were prejudiced by the amendment, or whether there was some other substantial reason to deny it."). The circuit court's reasoning for the denial was effectively that it would have been futile to grant the motion to amend the complaint if there were a basis for granting summary judgment. Because we concluded there was no basis for granting summary judgment, we cannot definitely say an amendment would have been clearly futile. *See Skydive Myrtle Beach, Inc.*, 426 S.C. at 192, 804 S.E.2d at 594 ("In this case, we cannot definitively say it would be impossible for [the appellant] to succeed with an amended pleading. Allowing leave to amend the complaint, therefore, was not clearly futile.").

Accordingly, we reverse and remand to the circuit court for a ruling on the motion to amend consistent with this court's opinion.

**CONCLUSION**

For the foregoing reasons, we hold the circuit court erred in referring the matter to the master because Maybank was entitled to a trial by jury and sought to invoke that right in its complaint. We also reverse the circuit court's grant of summary judgment because the parties' intention as to the character of the easement is a genuine issue of material fact. Finally, we reverse the circuit court's denial of Maybank's motion to amend its complaint.

Accordingly, the circuit court's orders are reversed, and the matter is remanded to the circuit court for further proceedings.

**REVERSED AND REMANDED.**

**HEWITT and VINSON, JJ., concur.**